[File No. 7294]

CARSTEN NEVLAND and SHELIA NEVLAND, Appellants,
v. HENRY M. NJUST, Respondent.

(51 NW2d 845)

748

Opinion filed February 21, 1952

*L. T. Sproul* and *Romen H. Fitzner,* for appellants on appeal.
*Thompson & Duffy,* for respondent.

CHRISTIANSON, J.   Plaintiffs brought this action to recover damages from the defendant for the flooding of plaintiffs' land. The complaint alleges that the plaintiffs are the owners of the $NE\frac{1}{4}$ and $E\frac{1}{2}W\frac{1}{2}$ of Section 6 in Township 145, Range 59 in

Griggs County in this state. That the same is fertile and productive land and that the plaintiffs cropped the same in 1945, 1946, 1947 and 1948. That the defendant is the owner of the S½ of Section 31, Township 146, Range 59, lying immediately north of the lands owned and occupied by the plaintiffs. That there are low areas on the lands of the defendant which would receive water from the higher land to the north, northeast and northwest. That on or about October 1, 1948, the defendants dug ditches from such low areas down toward the land of the plaintiffs and that through such ditches the surface water and other waters "drained onto the lands of the plaintiffs doing heavy damage." That plaintiffs' land was flooded as a result of the negligent and wrongful construction of such ditches by the defendant, causing the water to overflow plaintiffs' land in great quantities, which water the defendant had diverted from its natural course and from the way in which it had been accustomed to drain and thereby caused the same to inundate the farm of the plaintiffs as above described; and as a result of such negligent and wrongful digging of ditches and the negligent and unlawful diversion of the course of said waters, plaintiffs' land has been constantly overflowed for the last two years and crops destroyed and the lands rendered unproductive. That as a consequence the plaintiffs have been damaged in the sum of $7000. Judgment is asked for $7000 for compensatory damages and for $2000 for punitive damages. To this complaint the defendant interposed an answer in which he admits that he is the owner of the half section of land alleged to be his in plaintiffs' complaint. He admits also that the plaintiffs are the owners of the 320 acres of land which it is alleged in the complaint that they own. The defendant further admits that in the fall of 1948 he did dig some ditches to accelerate the flow of water from some small sloughs to a large flat or meadow on the southern part of his land, and which was the natural drainage of said sloughs and that this "large flat or meadow covers about sixty-five acres of defendant's land and extends onto plaintiffs' land covering about thirty-five acres thereof." It is further alleged that the construction of such ditches has not damaged plaintiffs' land to any extent whatsoever; and that any flooding of plaintiffs' land during the years

1949 and 1950 was caused by unusual snow and rainfall and not by any act of the defendant. Except as to the facts so admitted the defendant denies the allegations in plaintiffs' complaint and asks judgment that the action be dismissed. The case was tried to a jury upon the issues framed by the pleadings and resulted in a verdict in favor of the defendant for a dismissal of the action. Judgment was entered accordingly. Thereafter plaintiffs moved for a new trial. The motion was denied and plaintiffs have appealed. L. T. Sproul and Romen H. Fitzner, who appeared as attorneys for the plaintiffs and appellants, Carsten Nevland and Shelia Nevland, on the argument in this court did not represent the plaintiffs upon the trial of the action. They were substituted as attorneys for the plaintiffs after the service of the notice of appeal.

At the threshold of the hearing of this appeal we are met with a motion by the defendant to dismiss the appeal from the judgment and from the order denying a new trial. The motion to dismiss the appeal from the judgment is based on the grounds (1) that the notice of appeal was not filed with the clerk of the district court in which the judgment was entered within the time required by law; and (2) that an undertaking on appeal was not executed and served upon the defendant or his counsel or filed with the clerk of the district court in which the judgment was entered, as prescribed by NDRC 1943, 28-2709.

The judgment was entered in the office of the clerk of the district court on May 19, 1951. Notice of entry of judgment was served personally on plaintiffs' attorney of record on May 21, 1951. The motion for a new trial was noticed to be heard and heard November 17, 1951. An order denying the motion was made and entered on that same day. A notice of appeal was served upon the attorneys of record for the defendant on that same day. The notice of appeal was filed in the office of the clerk of the district court on January 12, 1952. Our statutes relating to appeals from the district court to the supreme court provide:

"An appeal from a judgment may be taken within six months after the entry thereof by default or after written notice of the entry thereof, in case the party against whom it is entered has appeared in the action, and from an order within sixty days

after written notice of the same shall have been given to the party appealing." NDRC 1943, 28–2704.

"An appeal must be taken by serving a notice in writing signed by the appellant or his attorney on the adverse party and filing the same in the office of the clerk of the court in which the judgment or order appealed from is entered, stating the appeal from the same, . . . ." NDRC 1943, 28–2705.

The above quoted statutory provision (NDRC 1943, 28–2705) was enacted in its present form as Section 5606, Revised Codes of North Dakota, 1895, and has been retained as a part of the laws of the State of North Dakota since its enactment in 1895 without any substantial change. This statute was construed by this court in Stierlen v. Stierlen, 8 ND 297, 78 NW 990. In the decision in that case this court said:

"We are of the opinion that the failure to file the notice of appeal with the clerk of the District Court, within the time fixed by statute for taking an appeal from an order of the District Court, is fatal to the appeal. After fixing a time within which the appeal must be taken (Rev Codes, Sec 5605), the statute proceeds to point out the particular steps which are essential in taking an appeal to this Court from an order or judgment entered in the District Court. These steps are two in number. Section 5606 is as follows: 'An appeal must be taken by serving a notice in writing, signed by the appellant or his attorney, on the adverse party, and filing the same in the office of the clerk of the court in which the judgment or order appealed from is entered.' It will be noticed that this statute nowhere declares that either one of these two prerequisite steps is more important than the other in the process of taking an appeal; nor is there an intimation in the statute that either the service or filing of the notice can be postponed, under any circumstances, to a date beyond the limit fixed by statute for taking an appeal. . . . It is elementary that a statute which limits the time for an appeal is mandatory and jurisdictional, and therefore must be strictly construed, and where an appeal has not been taken within the statutory period the court of review is without power to do more than dismiss the appeal; nor can this statutory time be extended

by the courts, unless the power to do so is expressly given in the statute." 8 ND at pp 298–299, 300, 78 NW at pp 990–991.

The rule of the statute as announced in that decision has not been changed either by subsequent legislation or judicial construction and has been recognized and enforced in subsequent decisions of this court. Peterson v. Wolff, 68 ND 354, 359, 280 NW 187. See, also, the National Bank of Commerce v. Pick, 13 ND 74, 99 NW 63; Embden State Bank v. Schulze, 49 ND 777, 193 NW 481. It is undisputed that in this case the notice of appeal was not filed in the office of the clerk of the district court within the time prescribed by NDRC 1943, 28–2704, which was essential to the appeal. The failure to do so was fatal to the appeal. No jurisdiction was conferred upon this court over the appeal, and the appeal from the judgment must be dismissed. The conclusion we have reached on the first ground urged for the dismissal of the appeal from the judgment renders it unnecessary for us to consider the second ground.

The dismissal of the appeal from the judgment does not affect the appeal from the order denying a new trial.

"Under the statutes of this state, the remedies afforded by an appeal from a judgment and an appeal from an order refusing a new trial are independent remedies. The right to appeal from an order denying a motion for new trial may be exercised after the time for appealing from the judgment has expired, provided the appeal is taken within the time limited by statute for appealing from such orders." King v. Hanson, 13 ND 86, 99 NW 1085.

The motion to dismiss the appeal from the order denying a new trial is based upon the ground that the court was without jurisdiction to entertain such motion at the time the motion was made. NDRC 1943, 28–1903 provides:

"A motion for a new trial must be made within the following time after the return of the verdict or rendition of the decision: 1. Upon the ground of newly discovered evidence, within six months; and 2. Upon any other ground, within sixty days, unless the court, for good cause shown, shall extend the time."

The verdict in this case was returned on May 16, 1951. The motion for a new trial was made November 17, 1951. As will be

shown hereafter the motion for a new trial was not based upon the ground of newly discovered evidence but upon grounds which fall under the second subdivision stated in Section 28–1903, supra. The defendant contends that the court was without jurisdiction to entertain a motion for a new trial after the expiration of 60 days from the return of the verdict unless the court for good cause shown had extended the time and it is asserted that no extension of time had been made and that no good cause for making extension was shown. Defendant's contention that the court was without jurisdiction to hear the motion cannot be sustained. At the time the motion for a new trial was made the action was still pending. NDRC 1943, 28–0510; Skaar v. Eppland, 35 ND 116, 159 NW 707. The jurisdiction of the court to entertain a motion for a new trial is not terminated as long as the action is pending. Whether the facts and circumstances are such that the court should hear and consider the motion on its merits is a different question and one for the court's determination in the exercise of its jurisdiction. It was for the court to determine whether the motion should or should not be heard. No statement of the case was settled to show what transpired upon the hearing of the motion. It appears, however, that the court refused to find that no ground had been shown for an extension of time to move for a new trial and that the court determined the motion on its merits. The action of the court was not one without or in excess of its jurisdiction. Even though the action of the court were erroneous, that did not render its action one without or in excess of jurisdiction and does not constitute a ground for dismissing the appeal from the order which the court made. The motion to dismiss the appeal from the order denying a new trial is denied.

The statute relating to motions for a new trial provides:

"A party desiring to make a motion for a new trial . . . shall serve with the notice of motion, . . . a concise statement of the errors of law he complains of, and if he claims the evidence is insufficient to support the verdict or that the evidence is of such character that the verdict should be set aside as a matter of discretion, he shall so specify. A specification of insufficiency

of the evidence to sustain the verdict or decision of the court shall point out wherein the evidence is insufficient and it shall be proper to include in such specification, specifications of facts conclusively established, together with the facts claimed not to be established, in such manner as to show intelligently wherein on the whole cause, the verdict or decision is not supported by the evidence." NDRC 1943, 28–1809.

Under this statute a motion for a new trial presents no question as to whether the evidence is sufficient or insufficient to sustain the verdict unless the moving party presents with, and as a part of, his motion for a new trial the specifications of insufficiency of the evidence prescribed by the statute. Feil v. Northwestern German Farmers Mut. Ins. Co., 28 ND 355, 357, 149 NW 358; Cary Mfg. Co. v. Ferch, 67 ND 603, 275 NW 255; Haslam v. Babcock, 71 ND 363, 1 NW2d 335; Enget v. Neff, 77 ND 35, 43 NW2d 644, 646.

In this case plaintiffs' motion for a new trial was not accompanied by any specifications of the insufficiency or the inadequacy of the evidence and consequently no question as to the sufficiency of the evidence was presented to the trial court or is presented to this court on this appeal. There were, however, attached to and served with the notice of the motion for a new trial certain specifications of errors of law. The errors so specified relate to rulings made, and actions taken by the trial court during the introduction of evidence and also upon one specification assigning error in an instruction given by the court to the jury.

The first assignment of error argued in plaintiffs' brief is predicated upon a statement made by the trial court during the direct examination of a witness who had been called and testified in behalf of the plaintiff. Plaintiffs' counsel asked a leading question. Immediately following the question defendant's counsel said, "Just a moment, We object to leading questions." Thereupon the court said, "You would have had to object to every question that is being asked then." The court made no other ruling and the examination proceeded. Some time before, in the examination of another witness a somewhat similar situation

had developed. While plaintiffs' counsel was propounding a question defendant's counsel said, "Object to leading questions." The court said, "I am surprised the objection hasn't come before." Plaintiffs' counsel then said, "I am not finished." The court then said, "But you have been leading all the time." Plaintiffs' counsel then said, "Yes, I will admit that." The court then said, "Let's ask questions without leading." Plaintiffs' counsel then said, "Just as a matter of saving time." The court said: "On preliminaries I will allow leading questions, but not when it comes to the critical features of the lawsuit."

The objection under consideration was to the form of a question. It is inconceivable that the remark of the court could have disparaged plaintiffs' case or the credibility of their witnesses or in any manner influenced the jury in their deliberations or the verdict which they returned. We are all agreed that no prejudicial error was committed by the court by the remarks objected to.

It is next contended that the court erred in denying a motion to strike an answer to a question on the ground that the answer was not responsive. Both plaintiffs and defendant produced as witnesses upon the trial, civil engineers who had made inspection of the premises and had prepared plats which were received in evidence. One Thompson, a civil engineer, testified as a witness for the defendant. In the course of his testimony Thompson produced, and there was admitted in evidence without objection, a plat which he had prepared showing the natural drains and also the ditches constructed by the defendant as well as the potholes or sloughs on defendant's land drained by such ditches. The plat also showed the elevations of the land and of the ditches and potholes or sloughs. In response to questions by counsel for the defendant on direct examination and by plaintiffs' counsel on cross examination Thompson testified with respect to the figures on the plat of elevations at such different points. He also testified to the size of the different potholes or sloughs, including their area and depth and the quantity of water that would be contained in each and all of such potholes or sloughs when full. He also testified that if the water from all such potholes were spread over two hundred acres, the depth

thereof would be about two-thirds of an inch. On cross-examination plaintiffs' counsel asked, "Now, you have gauged the amount of water that you say came down from this land onto the property of Nevland as being a fraction of an inch, is that right?" To this question Thompson answered, "I said the water that would be contained in these various potholes and sloughs if they were full." Plaintiffs' counsel then asked, "And you don't take into consideration, then, any of the rain or water that might come down through these ditches that are drained from other lands; you don't consider them at all in that estimation?" To this question the witness answered, "No, they shouldn't be." Plaintiffs' attorney then moved that the answer be stricken as not responsive to the question. The motion was denied. It is upon this ruling that the specification of error is predicated. It will be noted that the first part of the answer was clearly responsive. The motion was to strike the entire answer, that it was not responsive. The motion was too broad, and there was no error in denying the motion to strike. Paul v. St. Paul F. & M. Ins. Co., 64 ND 479, 253 NW 752; 64 CJ p 219, Sec 229. Furthermore, it is difficult to understand how any harm could possibly have resulted from permitting the answer to remain as given by the witness.

The next assignment of error is predicated upon the overruling of an objection to certain testimony of one Boe who had been called as a witness for the defendant. Boe testified that he had lived in that vicinity practically all his life, that in 1915 he farmed land adjoining the plaintiffs' land. He testified that he had seen the land flooded in prior years. That in 1916 it was all under water. He testified that he was familiar with the condition of the drainage in that territory, that the direction of the natural flow was southwest. He also testified that he was familiar with a slough between the Nevland farm and the Njust farm. All of this testimony was admitted without objection. He was then asked what was the natural flow of the drainage from the slough. To this question plaintiffs' counsel objected on the ground that no foundation had been laid, that there was no showing that the witness had been down and examined the slough. The objection was overruled. The court observed that

the question was for the purpose of laying a foundation. The witness answered the question in the affirmative. Plaintiffs' counsel then asked what is the direction of the natural flow. To this question plaintiffs' counsel objected on the ground that no foundation had been laid for the question. The court then stated that he would give plaintiffs' counsel an opportunity to cross examine the witness in support of his objection. Thereupon plaintiffs' counsel proceeded to cross examine the witness. In response to questions the witness testified that he had not been down at the slough recently, that he farmed there in 1915. When asked, "And you haven't been down there since?" He answered, "No, not that I really could tell whether any water was flowing." Plaintiffs' counsel said, "And you haven't been down there since 1915?" To which the witness answered, "Oh, I have been down there." Plaintiffs' counsel then said, "I mean to make any observation." To which the witness answered, "No." Plaintiffs' counsel then renewed the objection. Thereupon the court propounded the following question to Boe: "When you did farm there were you there often enough in the spring of the year when water was flowing so you then observed the natural slope, that is, so you then observed the direction in which water would run in the seasons of high water?" The witness answered this question, "Yes." The court thereupon overruled the objection. No error was committed by this ruling. The question objected to was not directed at the condition of the lands and the amount of flooding in 1949 and 1950.. They were directed merely as to the lay of the land, the natural slope or drainage. There is no claim that anything had been done since 1915 to change the slope of the land or the direction of drainage or natural flow. Presumptively, the land would slope the same way and the water would run the same way in 1949 and 1950 as in 1915.

The next and last assignment of error argued by plaintiffs' counsel is predicated upon the court's instructions to the jury. The instruction challenged is in a measure qualified and explained by what was said in the instructions immediately before the instruction was given. Hence, in order that the instruction

assailed may be considered in light of what was said immediately before the instruction was given, we set forth below the instruction challenged and also what was said immediately preceding that instruction. The portion of the instruction challenged as erroneous has been italicized. In the instructions the court said:

"I instruct you that an owner of land may lawfully improve his property, do what is reasonably appropriate for that purpose, so in this case the defendant had a legal right to construct drains upon his lands for the purpose of draining sloughs and potholes thereon without becoming liable to the plaintiffs as adjoining property owners unless in so doing he was guilty of negligence such as is defined in these instructions, and which negligence proximately caused injury or damage to the plaintiffs. In that connection, it was the duty of the defendant to anticipate and to guard the plaintiffs' property against such floods as might occur in the ordinary course of nature and also foresee and have in mind unusual storms or floods as may occasionally occur and could, therefore, be reasonably anticipated from the general experience of men residing in the region involved, but the defendant was not required to anticipate or foresee any unprecedented or extraordinary flood or floods which could not have been reasonably foreseen by men of ordinary experience and prudence. In other words, failure on the part of the defendant to anticipate and have in mind ordinary floods and also unusual floods which might be reasonably anticipated would constitute negligence, but failure to have in mind or anticipate any extraordinary and unprecedented floods which could not have been reasonably foreseen by men of ordinary experience and prudence would not constitute negligence on his part.

"*If you reach that point in your deliberations in this case it will be for you jurors to determine whether or not the floods which occurred in the seasons of 1949 and 1950, or either of such years, were floods which could have been reasonably foreseen by men of ordinary experience and prudence. If you believe from the evidence that the flood conditions which existed in the years 1949 and 1950 were so extraordinary or unprecedented that they could not reasonably have been foreseen by men of ordinary experience and prudence, then I charge you that same*

*was an act of God and that the defendant cannot be held respon-*
*sible therefor and your verdict in that case must be for the de-*
*fendant. If, however, you find by a fair preponderance of the*
*evidence that the defendant negligently constructed, maintained*
*and used the drainage ditches that are involved in this case in*
*such a manner as would constitute negligence on his part as set*
*out in these instructions and that such negligence was the direct*
*and proximate cause of the damages suffered by the plaintiffs,*
*then your verdict should be for the plaintiffs and then you should*
*proceed to determine what damages have been suffered by the*
*plaintiffs due to such negligence."*

The instructions in this case were in writing. There were no requests for any further or additional instructions nor was there request that any of the instructions be not given. It is elementary that the instructions to a jury should be considered as a whole. We are agreed that the instructions to the jury in this case, considered as a whole, are not erroneous and did not operate to mislead the jury. If the plaintiff desired more specific and comprehensive instruction, request for such instruction should have been made. Zilke v. Johnson, 22 ND 75, 132 NW 640; McGregor v. Great Northern Railway Co., 31 ND 471, 154 NW 261; Buchanan v. Occident Elevator Company, 33 ND 346, 157 NW 122; Halverson v. Lasell, 33 ND 613, 157 NW 682; Reichert v. Northern Pacific Railway Co., 39 ND 114, 167 NW 127; Jaszkowiak v. Refling et al, 62 ND 601, 245 NW 817; Blackstead v. Kent, 63 ND 246, 247 NW 607. In American Jurisprudence it is said:

"It is an established general rule that when a party is of the opinion that the instructions given by the court are not explicit enough upon certain points or do not cover all phases of the case, he should call the attention of the court to that fact, and tender other and fuller instructions or request the court to give such further instructions as he desires; otherwise he cannot predicate error upon omissions in the charge as given. Where instructions given are applicable to the evidence, so far as they go, and set forth with reasonable fullness the general principles applicable to the case, or to a particular issue, the party desiring further,

fuller, or more particular or specific instructions should request them." 53 Am Jur, Trial, Sec 513, pp 414-415.

The order denying a new trial is affirmed.

MORRIS, C. J., SATHRE, BURKE and GRIMSON, JJ., concur.