Annabelle L. LINDENBERG, Plaintiff
and Respondent,

v.

Dennis FOLSON, Aldis Folson, Jolanda Fol-
son, and Alice Jean Folson, doing business
as Leonard Folson and Company; and
Lockwood Graders of North Dakota, Inc.,
a corporation, Defendants and Appellants.

No. 8244.

Supreme Court of North Dakota.

Nov. 30, 1965.

DePuy, Fair & O'Connor, Grafton, for Dennis Folson, Aldis Folson, Jolanda Folson, and Alice Jean Folson, doing business as Leonard Folson & Co.

Grimson & O'Keefe, Grafton, for Lockwood Graders of North Dakota, Inc.

Ringsak & Webb, Grafton, for Annabelle L. Lindenberg.

TEIGEN, Judge.

The defendants have separately appealed from an order denying a judgment notwithstanding the verdict and new trial and from the judgment.

The plaintiff seeks to recover damages for personal injuries sustained when her hand and arm were caught and injured in a potato-harvesting machine upon which she was working. She has sued her employer, the defendant Folson, and the manufacturer of the potato-harvesting machine, the defendant Lockwood. The plaintiff's claims are based on negligence in that her employer failed to provide a safe and suitable machine and that the defendant Lockwood designed, manufactured, and sold the machine which was imminently and inherently dangerous to life and limb.

The defendants admit the occurrence of the injury, deny the plaintiff's allegations of negligence, allege that the plaintiff was contributorily negligent or that she assumed the risk.

The case was tried to a jury and it returned a verdict in favor of the plaintiff in the amount of $15,184.68, against both defendants, upon which judgment was entered.

We shall first consider the appeal from the judgment. Section 28-18-09, N.D.C.C., provides that a party desiring to appeal from a judgment of the district court in an action not triable de novo in the Supreme Court is required to serve with the notice of appeal:

"a concise statement of the errors of law he complains of, and if he claims the evidence is insufficient to support the verdict or that the evidence is of such character that the verdict should be set aside as a matter of discretion, he shall so specify. A specification of insufficiency of the evidence to sustain the verdict * * * shall point out wherein the evidence is insufficient and it shall be proper to include in such specification, specifications of facts conclusively established, together with the facts claimed not to be established, in such manner as to show intelligibly wherein, on the whole case, the verdict * * * is not supported by the evidence."

In Mills v. Roggensack, N.D., 92 N.W.2d 722, we said:

"Upon an appeal to the supreme court from a judgment rendered in an action not triable de novo upon appeal neither errors of law not appearing on the face of the judgment roll nor the sufficiency of the evidence may be reviewed in the absence of specifications of error."

See also Ripplinger v. Otten, 77 N.D. 531, 44 N.W.2d 60.

In this case neither appellant served specifications of error with the notice of appeal from the judgment and none has been served or filed. It is not claimed that any errors appeared on the face of the judgment roll. The appeal from the judgment presents nothing for this court to review.

Each defendant moved for a directed verdict at the close of all of the evidence and each adopted the grounds of the other. The motions were resisted by the plaintiff and the trial court denied both motions and submitted the issues to the jury. The jury returned a verdict in favor of the plaintiff and against both defendants and they each moved in the alternative for judgment notwithstanding the verdict or a new trial. The trial court denied the motions.

■ A motion for judgment notwithstanding the verdict calls for a review of the grounds assigned in support of the motion for a directed verdict. Hanson v. Fledderman, N.D., 111 N.W.2d 401; Leach v. Kelsch, N.D., 106 N.W.2d 358; Westerso v. City of Williston, 77 N.D. 251, 42 N.W.2d 429.

■ The only question before the appellate court on an appeal from an order denying a motion for judgment notwithstanding the verdict is whether the motion for a directed verdict should have been granted had the court not been prohibited from granting the same because of Rule 50(a), N.D.R.Civ.P Hanson v. Fledderman, N.D., 111 N.W.2d 401.

The defendant Lockwood designed and manufactured the potato harvester and sold it to the defendant Folson who grows potatoes. The plaintiff was employed by the defendant Folson to work on the harvester as it was being used to harvest potatoes. The harvester is pulled by a tractor which also supplies the power through its power take-off to operate a hydraulic motor on the harvester. The potatoes are dug, using another machine, and left on the ground in rows. The potato-harvesting machine is then pulled along the row of potatoes and picks the potatoes from the top of the ground and elevates them into a truck which is driven alongside the harvester. The harvester has several conveyors on which the potatoes are carried before they are deposited in the truck. These conveyors are powered by the hydraulic motor. The harvester will also pick up potato vines and lumps of dirt and carry them with the potatoes on its conveyors. Platforms are strategically located beside the conveyors. Three to five employees stand on the platforms and pick the potato vines, lumps of dirt, spoiled potatoes, and any other foreign matter by hand and drop them to the ground. This is a cleaning or separation operation and only good potatoes should be elevated into the truck.

The plaintiff was a crew member on the machine and, at the time she sustained her injury, she was standing on the platform at the rear of the machine. She was facing one of these conveyors which, because it is relatively level, is called the "picking table." The number of crew members working on the harvester, at a particular time, varies with the amount of foreign material being picked up by the harvester. Sometimes two crew members occupy the rear platform but at the time of the accident the plaintiff was working at the picking table alone.

After the potatoes leave the picking table, they move to a conveyor which elevates and deposits them into the truck as it is being driven alongside. The harvester moves along the row of potatoes being picked the length of the field and then returns picking the next row of potatoes. The employees rotate positions at each end of the field. Thus the picking of potatoes from the ground by the harvester, the elevating of the potatoes, and the removal of the foreign material by the crew members all occur simultaneously as the harvester is being pulled over the field. The conveyors, including the picking table, are activated and run by a series of sprocket wheels connected with chains, one powering the next in order from the single source of power, to wit, the hydraulic motor. There is also a tractor operator and the harvester's forward motion and the movement of its conveyors are stopped when the tractor operator disengages the clutch on the tractor.

The plaintiff was working at the picking table when she was injured. A shaft upon which is mounted two sprocket wheels extends out from the side at the end of the picking table where the plaintiff was working. Each sprocket wheel carries a chain. The inner sprocket wheel carries a chain which is connected to a drive sprocket located to the left and lower. The other chain runs over the outer sprocket wheel and extends to the right and upward to another sprocket at the end of the conveyor which elevates the potatoes into the truck.

The plaintiff was standing facing the chain, which extends to the left and downward, but was separated from it by a metal guard or shield placed there to prevent the person standing on the platform and working the picking table from coming in contact with the chain. The guard or shield ends at the upper part of two sprockets attached to the shaft at the end of the picking table. The plaintiff testified she could not see the sprocket wheels or the chain that extended downward from the position she occupied on the platform as the guard obstructed her view. She could, however, see the chain that extended to the right and upward. It had no shield or guard and was in plain sight.

The plaintiff was in the process of removing foreign materials from the picking table by hand and dropping them to the ground behind the harvester. If potatoes were attached to the vines lifted from the picking table, the plaintiff was instructed to remove them. This was ordinarily accomplished by shaking the vines over the picking table or, if necessary, by pulling them off and returning them to the picking table. The picking table had a hand rail to which the plaintiff could hold for support but at times the operation called for the use of both hands. The plaintiff testified on direct examination as to the occurrence of the accident as follows:

"A. Well, I was standing on the right side taking the vines out and we threw vines to the left [later in her testimony she corrected her statement and testified positively she threw the vines to her right], and we would work until got a couple of vines and then as we threw them if there were—sometimes vines would be clean and some of potatoes would cling to vines and we had received instructions from Mr. Folson we were to be more careful.

"THE COURT: Mrs. Lindenberg, will request that you be seated.

"Q. If please the Court, we will explain why standing—in order to do that she is explaining how standing behind platform.

"THE COURT: All right, if that is the situation you may stand.

"Q. That correct, Mrs. Lindenberg?

"A. Yes. And as we would throw these around, if any potatoes that were still clinging we would try and grab them to put them back on here (indicates), and I had grabbed a bunch of vines and as threw them I grabbed for a potato and somehow lost my balance as the machine was going and as came around the next thing I knew I was in this. I suppose instantly grabbed for something, can't say because I— can't say—I came around and was in to this, but I lost my balance."

\*     \*     \*     \*     \*     \*

"A. Want me to explain again what I was doing or what happened when I—well, I was picking vines out of the picker there and I was throwing them to the left [right], and shaking them at same time to take off any potatoes were clinging and clung to vines, and we had quite a few potatoes like that were clinging to vines and I grabbed for these potatoes, and I lost my balance as I was coming around and that's the last I remember.

"Q. Remember grabbing for any support?

"A. Well, instinctly when came around my hand went out.

"Q. Remember what you grabbed for?

"A. No, I don't.

"Q. You were just grabbing?

"A. Yes."

On cross-examination she testified:

"A. While shaking vines and throwing to right of me and as I was shaking these clinging vines with potatoes clinging to them, I grabbed for some

of the potatoes that were clinging to vines and I lost balance and swung around toward the machine.

"Q. Were you reaching into the area where the chain was revolving?

"A. I suppose as I came around I was."

\* \* \* \* \* \*

"Q. I am showing you plaintiff's exhibit 6, now just where was it that your hand became—where your right arm became entangled in that machine?

"A. In here. (Indicates.)

\* \* \* \* \* \*

"Q. Where are you pointing to? Are you pointing just above the safety shield?

"A. Yes.

"Q. Was your arm then drawn down?

"A. Yes."

She also testified the platform upon which she was standing was not wide enough for her feet.

The plaintiff's right hand was caught in the sprocket wheel and chain mechanism and drawn downward, injuring the hand and arm. The foreman of the crew working on this machine operated the tractor. He stopped the harvester when he heard someone yell. He described what he saw as follows:

"A. Well, in fact could not tell where she was caught at first, got my son Don to get couple wrenches, took shield off to where she was caught, and seen her arm wrapped around this sprocket, then take pan off and rolled table back in order to get arm off sprocket.

"Q. You recall whether her arm was bent backward or whether wrapped in forward manner, recall that?

"A. Well the back end of machine runs clockwise so her arm was wrapped this way and she was pulled into it this way. (Indicates.)

"Q. Now was Mrs. Lindenberg standing or kneeling when got back of machine?

"A. She was bent over on top of machine.

"Q. And about how far into the machine had her hand and arm gone?

"A. I don't know. Seemed to be up in here somewhere to me. (Indicates.)"

The evidence indicates it took from 15 to 20 minutes to remove the plaintiff's arm from the machine. She was bleeding and a tourniquet was applied and she was removed to a hospital. The hand and arm were severely injured.

The evidence also establishes the harvester was a new machine purchased by the defendant Folson from the defendant Lockwood in the fall of 1956. The accident occurred on September 24, 1956. The defendant Folson made no alterations or additions to that part of the harvester where the accident occurred, except that a plank had been placed upon the metal platform upon which the plaintiff was standing. The plank was of the same width and length as the platform and was secure. The only complaint to the platform was that it was too narrow and too close to the harvester. Neither of these features were changed by the addition of the plank.

Negligence is premised on the claim that the defendant Folson failed to provide a reasonably safe and suitable machine resulting in unsafe working conditions and, therefore, breached its duty to the plaintiff; that the defendant Lockwood knew or reasonably should have known that the machine which it designed, manufactured, and sold to the defendant Folson, to be used for harvesting potatoes, was negligently designed, manufactured, and sold and, therefore, the defendant Lockwood breached its duty to the ultimate user, the plaintiff;

that neither of the defendants gave any warning or instructions of the danger incident to working on the machine; and that the danger was not obvious.

It is argued the proximate cause of the injury was the failure to install an adequate guard or shield over the two sprocket wheels at the right end of the picking table and the chain which extended upward from the outer sprocket wheel to the end of the elevating conveyor. It is urged the shield, which only partially covered this dangerous area, was a latent defect and inherently dangerous to an employee working the picking table.

The plaintiff testified she had not been warned of the danger and there were no warning signs on the machine. She also testified she did not know what was located behind the partial shield, except that she saw the chain but that she had never noticed the chain in motion and did not know of the danger. Excellent photographs of the machine and of the parts in question were introduced in evidence.

The plaintiff is a housewife 39 years of age and the mother of nine children. She was reared and had lived all of her life in a small town. She had limited experience in potato farming. She had worked in a potato warehouse grading potatoes during the fall season and occasionally in the winter starting in 1952. In the fall of 1955 she worked intermittently on a potato harvester for the defendant Folson over a period of about one and one-half months. Again in the fall of 1956 she was employed by the defendant Folson and worked on the new potato harvester. She had worked about 70 hours when this accident happened. It appears she had no other experience with farm machinery.

Because each defendant adopted the grounds of the other in making the respective motions for directed verdict, we will consider them together. They may succinctly be stated as follows: (1) That the plaintiff has failed to sustain the burden of proof that the defendants were negligent or that their negligence, if any, was the proximate cause of plaintiff's injuries; (2) That the evidence establishes accident; (3) That the defendant Lockwood, as the manufacturer, is not liable for damages to an ultimate user for faulty design, that all farm machines are dangerous and the danger, if any, was patent and obvious, and that neither the defendant Lockwood, as the manufacturer, nor the defendant Folson, as the master, owed a duty to warn the plaintiff of danger; and (4) That the evidence establishes as a matter of law that the plaintiff was contributorily negligent or assumed the risk.

Ordinarily, negligence and proximate cause are questions of fact for the jury. They become questions of law only when the evidence is such that ordinarily intelligent, reasonable, and fair-minded men, in the exercise of reason and judgment, can reasonably draw but one conclusion. If the evidence is such that ordinarily intelligent, reasonable, and fair-minded men, in the exercise of reason and judgment, may reasonably draw different conclusions from the evidence and the circumstances, or to the facts or the deductions to be drawn from the facts, then they are questions of fact for the jury. Schmitt v. Northern Improvement Co., N.D., 115 N.W.2d 713; McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771; Maloney v. City of Grand Forks, 73 N.D. 445, 15 N.W.2d 769; Leonard v. North Dakota Cooperative Wool Marketing Ass'n., 72 N.D. 310, 6 N.W.2d 576; Logan v. Schjeldahl, 66 N.D. 152, 262 N.W. 463; Newton v. Gretter, 60 N.D. 635, 236 N.W. 254; Dougherty v. Davis, 48 N.D. 883, 187 N.W. 616; McGregor v. Great Northern Railway Co., 31 N.D. 471, 154 N.W. 261.

Upon review of an order denying a motion for judgment notwithstanding the verdict, the question is whether the party making the motion was entitled to a directed verdict at the time the motion for a directed verdict was made. Upon consideration of the question, we must review

the evidence in the light most favorable to the verdict and resolve conflicts of testimony against the losing party. Avron v. Plummer, N.D., 132 N.W.2d 198; Anderson v. Stokkeland, N.D., 125 N.W.2d 665; Bauer v. Kruger, N.D., 114 N.W.2d 553; Lund v. Knoff, N.D., 85 N.W.2d 676. A motion for judgment notwithstanding the verdict admits the truth of evidence against the movant and also admits inferences and conclusions which reasonably may be deduced from such evidence. Schmitt v. Northern Improvement Co., N.D., 115 N.W.2d 713; Mischel v. Vogel, N.D., 96 N.W.2d 233; Schantz v. Northern Pacific Railway Co., 42 N.D. 377, 173 N.W. 556.

■ Thus all of the evidence favorable to the plaintiff and all inferences and conclusions which can reasonably be drawn from such evidence must be assumed to be true on this appeal. The evidence establishes the plaintiff was a woman of very little experience with farm machinery. She did not understand its mechanism or its operation. She was required to stand upon a narrow platform upon a moving machine without any support and use both of her hands, if necessary, to remove vines and other foreign material from the potatoes that were passing before her on a moving conveyor called a picking table. If potatoes clung to vines which she lifted from the conveyor, she was instructed to remove them and return them to the conveyor. This often required the use of both hands. Immediately adjacent to the place where the plaintiff was standing were the two sprocket wheels, only partially shielded, which had chains running over them that rotated when the machine was in operation. One of the chains was fully exposed. While carrying out her duties, as intended, she lost her balance and instinctively reached for support. As a result, she got her hand caught in the chains and sprockets of the machine. Any ordinarily intelligent, reasonable, and fair-minded person would anticipate that a person working under such conditions might on occasion lose his balance and would instinctively take precautionary steps to avoid falling. The natural thing to do under such circumstances is to reach out for something for support to prevent a fall. Under such circumstances one does not have time to select with care the object upon which he will rely for such support. The partially shielded sprockets and unshielded chain were within easy reach and, under the circumstances, it appears to us were natural objects for the hand to come in contact with. Ordinary care in design of the machine could well have been found by the jury to have called for greater protection than that provided. The harvester in this respect, under the evidence submitted in this case, could properly be found to be inherently dangerous and involved an unreasonable risk of bodily harm to one using it for the purpose for which it was manufactured, sold, and used. The evidence establishes that neither the manufacturer nor the employer gave any warning of this danger whatsoever. The evidence also establishes it was general practice to employ women to work on potato harvesters.

■ A master or the manufacturer is not required to point out dangers which are known or are obvious to the user of a machine, but he does have a duty to warn and give safety instructions of dangers incident to the work upon a machine which are not obvious to the user. This is especially true where the users employed to work on the machine are inexperienced or lack capacity to know and appreciate the risk and danger. The manufacturer, in this case, has been in the business of manufacturing and selling potato-harvesting machines for several years. The model in use, in this case, was a new model. There were no printed instructions contained on or separate from the harvester warning of this danger. The machine was being used in the manner and for the purpose intended by the manufacturer and it had not been altered or changed in the dangerous area, nor was its use or operation changed. It was designed, manufactured, and sold to be used by a crew of persons, each standing

at a different station upon the machine. The plaintiff occupied one of these stations when she was injured.

Prior to the sale of the harvester to the defendant Folson, it was the property of the defendant Lockwood who manufactured it. The defendant Lockwood had full and complete control of its design. It was manufactured to be marketed and sold to potato growers, such as the defendant Folson, and for use by employees of potato growers, such as the plaintiff. It was valuable and salable only because of its supposed fitness for use.

■ An employer has the duty to furnish employees with reasonably safe machinery, tools, and appliances. Vick v. Fanning, N.D., 129 N.W.2d 268; Abelstad v. Johnson, 41 N.D. 399, 170 N.W. 619.

■ An employer, in all cases, shall indemnify his employees for losses caused by the employer's want of care (Section 34–02–03, N.D.C.C.), unless relieved of liability under the workmen's compensation laws (Section 65–01–08, N.D.C.C.).

■ A master has a duty to warn and instruct immature and inexperienced servants who have a lack of capacity to appreciate the danger or dangers incident to the work which are not obvious to them. Levi v. Montgomery, N.D., 120 N.W.2d 383; Lund v. Knoff, N.D., 85 N.W.2d 676, 677, 67 A.L.R.2d 1110.

It is the lack of capacity and not the immaturity that is the determining factor. Torgerson v. Minneapolis St. P. & S. S. M. Ry. Co., 51 N.D. 745, 200 N.W. 1013.

It is also true that the manufacturer of a chattel owes a duty of care toward a user, although there is no privity of contract between them, where the article is inherently dangerous or where it is reasonably certain, if negligently designed or manufactured, to place life and limb in peril.

Our statute provides that everyone is responsible not only for the result of his willful acts but also for any injury occasioned to another by his want of ordinary care or skill in the management of his property except so far as the latter, willfully or by want of ordinary care, has brought the injury upon himself. Section 9–10–06, N.D. C.C.

Our statute also provides that every person is bound without contract to abstain from injuring the person or property of another or infringing upon any of his rights. Section 9–10–01, N.D.C.C.

"A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design." Restatement of the Law, Torts, Sec. 398.

In an annotation on the duty of a manufacturer with respect to design of a product, it is stated:

"* * * the standard which the courts have established is the traditional one of reasonable care * * *. The effect of this standard is to impose upon the manufacturer the duty so to design his product as to make it not accident-proof, but safe for the use for which it is intended." 76 A.L.R.2d 94.

■ Further, we find that a manufacturer supplying a machine has a duty to exercise reasonable care to inform the user of any dangerous condition and character of the machine when put to the use for which it was manufactured and sold, where such danger is known or which reasonably should have been known by the manufacturer in the exercise of ordinary care.

"One who has been injured by a product may seek to hold the manufacturer or seller liable on the theory that the design of the product made it dan-

gerous and, apart from whether it was negligent so to design it, negligence inhered in a failure to warn of the danger." 76 A.L.R.2d 96.

■ We have reviewed the instructions to the jury by the trial court and find that the questions of negligence on the theories advanced were properly and adequately given. The trial court also instructed on contributory negligence and assumption of risk and advised the jury that if they found the plaintiff contributorily negligent or that she had assumed the risk, it would absolve the defendants of any liability for her injury. The instructions were adequate. The jury found for the plaintiff against the defendants Folson and Lockwood. We find the evidence is such that the minds of reasonable men could differ with respect to these matters and that they were determined by the verdict of the jury. It was, therefore, proper for the trial court to have denied the motion for a directed verdict and a subsequent motion for judgment notwithstanding the verdict.

Each of the defendants has also separately appealed from the order denying their respective motions for a new trial. Neither defendant served specifications of error, nor have any been filed. The statute relating to motions for a new trial provides:

"A party desiring to make a motion for a new trial * * * shall serve with the notice of motion * * * a concise statement of the errors of law he complains of, and if he complains the evidence is insufficient to support the verdict or that the evidence is of such character that the verdict should be set aside as a matter of discretion, he shall so specify. A specification of insufficiency of the evidence to sustain the verdict or decision of the court shall point out wherein the evidence is insufficient and it shall be proper to include in such specification, specifications of facts conclusively established, together with the facts claimed not to be established, in such manner as to

show intelligibly wherein, on the whole case, the verdict or decision is not supported by the evidence." Section 28–18–09, N.D.C.C.

■ We have held that under this statute a motion for a new trial presents no question as to whether the evidence is sufficient or insufficient to sustain the verdict, unless the moving party presents with, and as a part of, his motion for a new trial specifications of insufficiency of the evidence described by the statute. Nevland v. Njust, 78 N.D. 747, 51 N.W.2d 845; Enget v. Neff, 77 N.D. 356, 43 N.W.2d 644; Jacobs v. Bever, 79 N.D. 168, 55 N.W. 2d 512; Montana-Dakota Utilities Co. v. Culver, N.D., 80 N.W.2d 541; Montana-Dakota Utilities Co. v. Amann, N.D., 81 N.W.2d 628; Mills v. Roggensack, N.D., 92 N.W.2d 722; Long v. People's Department Store, N.D., 95 N.W.2d 904; Sullwold v. Hoger, N.D., 110 N.W.2d 457; C. & M., Inc., v. Northern Founders Insurance Company of North Dakota, N.D., 112 N.W.2d 827.

■ It is also well settled that where a motion for new trial is made, errors of law, including errors in instructions, not specified in the motion for a new trial, are waived. Redahl v. Stevens, 64 N.D. 154, 250 N.W. 534; Braun v. Martin, 70 N.D. 216, 293 N.W. 317; Enget v. Neff, 77 N.D. 356, 43 N.W.2d 644; Morton v. Dakota Transfer & Storage Co., 78 N.D. 551, 50 N.W.2d 505; Goodman v. Mevorah, 79 N.D. 653, 59 N.W.2d 192; Montana-Dakota Utilities Co. v. Culver, N.D., 80 N.W.2d 541; Mills v. Roggensack, N.D., 92 N.W.2d 722.

However, we have reviewed the errors set forth and argued in the respective briefs of the defendants and their oral argument before this court. Many of these arguments have been answered in our review of the order denying motion for judgment notwithstanding the verdict. Most of the arguments have been disposed of or rendered immaterial by what we have already

said in this opinion. All of the arguments have been carefully considered and no prejudice to any of the defendants could have resulted from any of the matters complained of. They are found to be without merit.

The judgment and order are affirmed.

BURKE, C. J., and STRUTZ, ERICKSTAD, and KNUDSON, JJ., concur.