[Civ. No. 18042.   Second Dist., Div. Three.   July 27, 1951.]

OLIVE E. JAEHNE, Appellant, v. PACIFIC TELEPHONE
    AND   TELEGRAPH   COMPANY   (a   Corporation),
    Respondent.

Steiner A. Larsen and Garvin F. Shallenberger for Appellant.

Lawler, Felix & Hall and Leslie C. Tupper for Respondent.

VALLÉE, J.—Appeal by plaintiff from a judgment entered pursuant to an order granting a motion for judgment to be entered in accordance with a prior motion for a directed verdict (Code Civ. Proc., § 630) in an action for damages for personal injuries. A motion by defendant for a directed verdict was denied. The jury disagreed and a mistrial was declared. Thereafter defendant's motion under section 630 was granted and judgment entered.

The rules governing the determination of a motion made under section 630 of the Code of Civil Procedure are the same as those applicable to motions for a judgment of nonsuit and a directed verdict. (*Cf. Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 649 [122 P.2d 576] ; *Estate of Arnold*, 16 Cal.2d 573, 576, 581 [107 P.2d 25].)

Viewing the evidence in the light most favorable to plaintiff, indulging in all reasonable inferences in her favor, and disregarding all conflicting and contradictory evidence, the facts are these:

Defendant installed, maintained, and repaired a telephone switchboard in the Ambassador Hotel in Los Angeles. The board, about 30 feet long, was made up of nine switchboard units bolted together. The units adjoined each other, and the operators at times worked a half section on either side of a unit. Each unit, called a position, was given a number. The face of the board contained rows of holes, called jacks. Each position had a key shelf in which there was a dial, two rows of cords with 15 cords in each row resting in holes in the shelf, and control keys for the cords. The cords were weighted so that when taken from a connection they fell back into the shelf.

Each cord had a plug attached to it. From the plug, extending over a portion of the cord, were three layers of outer braid. Underneath the braid were three electrical conductors insulated with double-wound cotton around them, all twisted together.

Each conductor was made up of six copper strands. Each strand was made up of two ribbons of copper wrapped around a string. The strands were in ribbon form for flexibility and pliability.

Each plug was made of brass with a jacket of fiber or plastic. The cord was attached to the plug by being screwed into it so that the outer braid extended into it about three-eighths of an inch.

To establish a connection the cords were lifted by taking

hold of the plug resting in the shelf and inserting it into the jack. To disconnect, the operator took hold of the plug and pulled it out of the jack, letting it fall of its own weight into the shelf.

Plaintiff was employed by the Ambassador Hotel as an operator on the switchboard in December, 1946. She worked on all nine positions. The board was a very busy one. Plaintiff testified that all the cords in all nine positions were bad; some were frayed at the connection between the plugs and the cord, some as much as 6 to 8 inches from the plug; on some of them the jackets of the plugs were cracked; all of the cords were frayed more or less; all of the cords at position 8 were frayed as described. The condition of the cords was approximately the same from December, 1946, when she was first employed, until the day of the accident, February 4, 1947. There was other evidence with respect to the condition of the cords, particularly on position 8, to the same effect. The chief operator testified that cords on position 8 had been frayed for two months or longer prior to February 4, 1947; that during that time repairmen employed by defendant had occasion to inspect them at least 20 times. Miss Weston, an operator, testified that about two weeks prior to February 4, 1947, she reported to defendant that several of the cords on position 8 were in bad condition, "some of them all frayed out," and that none of them was repaired or replaced.

On February 4, 1947, while working at position 8, plaintiff reached slightly above the level of her shoulder and pulled two plugs out of jacks at the same time, her middle finger on one and her index finger on the other. She had to tug a little because the plugs were in tight and because of other cords around those she was pulling out. As she was pulling the plugs out she felt pain, "a pricking, a pinch" toward the front of the middle and index fingers of her left hand. She yelled. The operator on position 9 turned and looked and plaintiff told her she had pinched her finger. Plaintiff continued to work.

The chief operator testified that on February 4, 1947, plaintiff complained to her about the condition of the cords and that she relayed the complaint to defendant's wire chief. A few days later some of the cords on position 8 were replaced. Miss Weston testified that on February 4, 1947, while working on position 8, she drew her hand off a cord and got a piece of wire in the little finger of her left hand.

Two or three days after February 4, plaintiff had pain in her middle and index fingers and noticed they were infected

at about where she felt the pinch. The index finger was infected to just below the pad; the middle finger at the tip of the pad. She received medical attention in the course of which her index finger was probed and she "saw the very last piece of metal that was taken from my [her] finger." The piece of metal taken out "was shiny, very shiny and very thin and very small"; it stuck up from one side of the infection. A short time thereafter her middle and index fingers were amputated close to the joint nearest her hand.

The physician who first treated plaintiff testified that the condition of her index finger when he first saw her was consistent with her claim of injury. Another physician testified that the factor of injury was necessary to the infection in plaintiff's fingers; that any injury, such as a cut on the finger, was sufficient to start the infection which resulted in the amputation.

One Allen, an employee of defendant, had the responsibility of inspecting the cords, and repairing and maintaining the switchboard.

██ ██ The evidence recited was sufficient to require the trial judge to submit the cause to a jury. Defendant had exclusive control of the maintenance and repair of the switchboard. It was defendant's duty to use ordinary care to maintain it in reasonably safe condition. The evidence was such that a jury could reasonably infer that defendant failed in its duty; that it was negligent in its maintenance of the switchboard; and that its negligence in that respect was the proximate cause of the injuries sustained by plaintiff. The cause of the injury was not left to conjecture, suspicion or speculation. The evidence was sufficient to show what caused plaintiff's injury. She was not required to prove what caused the injury to the point of demonstration. Probability is all the law demands.

Defendant argues that it owed no duty to plaintiff. Everyone is responsible for an injury occasioned to another by want of ordinary care in the management of his property. (Civ. Code, § 1714.) Each person who suffers detriment from the unlawful omission of another may recover from the person in fault. (Civ. Code, § 3281.) ██ The relationship between defendant and plaintiff was that of inviter and invitee. (*Johnston* v. *Long,* 30 Cal.2d 54, 70 [181 P.2d 645]; *Oettinger* v. *Stewart,* 24 Cal.2d 133, 136 [148 P.2d 19, 156 A.L.R. 1221]; *Young's Adm'r* v. *Farmers & Depositors Bank,* 267 Ky. 845 [103 S.W.2d 667, 669]; 19 Cal.Jur. 619, § 54; 65 C.J.S. 508,

§ 43 (1).) Plaintiff was working on the switchboard in answer to the express or implied invitation of defendant on its business and to their mutual advantage. ■ Defendant owed plaintiff the duty of maintaining its property in a reasonably safe condition, and of exercising reasonable care in protecting her from injury through its negligence. (*Butcher* v. *Queen City Iron & Metal Co.,* 99 Cal.App.2d 25, 27 [221 P.2d 265].)

■ One who undertakes to furnish an appliance for the use of others ordinarily assumes a duty to furnish a proper and reasonably safe appliance, and is liable for injuries which may result to one using the appliance from his negligence. (*Blumberg* v. *M. & T. Incorporated,* 34 Cal.2d 226, 229 [209 P.2d 1]; *Biondini* v. *Amship Corp.,* 81 Cal.App.2d 751, 763, 766 [185 P.2d 94]; 65 C.J.S. 618, § 99.) The doctrine is placed on the ground of the failure of the former to exercise ordinary care which is due to everybody under the principles declared in sections 1708, 1714 and 3281 of the Civil Code. (*Dahms* v. *General Elevator Co.,* 214 Cal. 733, 737-742 [7 P.2d 1013]; *Lozano* v. *Pacific Gas & Elec. Co.,* 70 Cal.App.2d 415, 420 [161 P.2d 74]; *Cowles* v. *Independent Elevator Co.,* 22 Cal.App.2d 109, 114 [70 P.2d 711]; Anno. 6 A.L.R.2d 284.)

■ A person in control of an instrumentality on the property of another which may cause injury, owes to persons rightfully using the instrumentality the duty of inspecting it to see that it is in a reasonably safe condition. (*Polk* v. *City of Los Angeles,* 26 Cal.2d 519, 525 [159 P.2d 931]; 65 C.J.S. 596, § 87.) ■ There was abundant evidence that defendant knew, or should have known, the condition of the switchboard. Whether defendant was negligent was a question of fact. (*Butcher* v. *Queen City Iron & Metal Co., supra,* 99 Cal. App.2d 25, 27.)

Defendant argues that its failure to repair was not a proximate cause of plaintiff's injury. Whether there was a causal connection between the alleged negligence of defendant and plaintiff's injuries is a question for the jury. (*Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 419 [218 P.2d 17]; *Osborn* v. *City of Whittier,* 103 Cal.App.2d 609, 616 [230 P.2d 132].) The jury could reasonably infer from the evidence that plaintiff's injuries were caused by the defective condition of cords on position 8. It cannot be said, as a matter of law, that such inference cannot be drawn.

We conclude that the court erred in granting the motion made under Code of Civil Procedure section 630.

Plaintiff complains of other alleged errors which should be discussed in view of the necessity of a retrial.

■ The court limited the testimony of all witnesses called by plaintiff, except her own, to the condition of the switchboard at position 8. In this we think the court erred. The switchboard was one unit, owned, controlled, maintained and repaired by defendant. Its condition as a whole throws some light on its condition at the place where plaintiff was injured and on the question whether the defendant exercised ordinary care in its maintenance and repair.

■ The court refused to permit plaintiff to prove that other operators had been injured at the switchboard in substantially the same manner as described by plaintiff. The court did allow Miss Weston to testify that she was injured at position 8 on the same day that plaintiff was injured. Otherwise plaintiff was restricted as indicated. In so limiting the evidence the court erred. ■ Evidence of prior accidents which occurred under substantially the same general circumstances as the accident in question, is admissible to prove the existence of a defective or dangerous condition, to prove negligence, to prove notice, and to disclose the cause of the accident in question. (*Robinson* v. *Western States Gas etc. Co.*, 184 Cal. 401, 407, 408 [194 P. 39]; *Westman* v. *Clifton's Brookdale, Inc.*, 89 Cal.App.2d 307, 311, 314 [200 P.2d 814]; *City of Oakland* v. *Pacific Gas & Elec. Co.*, 47 Cal. App.2d 444, 448 [118 P.2d 328]; *People* v. *Lang Transportation Corp.*, 43 Cal.App.2d 134, 141 [110 P.2d 464]; *Long* v. *John Breuner Co.*, 36 Cal.App. 630, 639 [172 P. 1132].)

Other alleged errors are not likely to occur on a retrial and need not be discussed.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied August 14, 1951, and respondent's petition for a hearing by the Supreme Court was denied September 24, 1951.