Georgia Ann JOHNSON, a minor, by George B. Johnson and Agnes M. Johnson, guardians of the person of the said minor, Plaintiffs/Appellants,

v.

AMERICAN MOTORS CORPORATION, Defendant/Appellee.

Fred LINGOHR et al., Plaintiffs/Appellants,

v.

AMERICAN MOTORS CORPORATION, Defendant/Appellee.

Civ. Nos. 9040, 9041.

Supreme Court of North Dakota.

Dec. 20, 1974.

58

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiffs/appellants George B. Johnson and Agnes M. Johnson.

Tidball, Kemnitz, Axtmann & Lovald, Pierre, S. D., for plaintiffs/appellants Fred Lingohr and Catherine Lingohr.

Pringle & Herigstad, Minot, for defendant/appellee.

KNUDSON, Judge.

This consolidated appeal is from orders of the district court of Ward County entering summary judgments on March 15, 1974, in favor of the defendant, American Motors Corporation (hereinafter AMC), in two cases arising out of an automobile collision on October 2, 1971. The appeals were briefed and argued together and will be resolved together in this opinion.

Peggy Ann Johnson was the operator of a 1960 Rambler station wagon in which Gloria Jean Lingohr was a passenger, when the car was struck from behind by a 1963 Cadillac operated by one Michael Coughlin. Immediately upon impact the Rambler burst into flames and its occupants were incinerated. A passenger in the Cadillac also died as a result of injuries received in the accident.

Georgia Ann Johnson, minor child of Peggy Ann Johnson, commenced a wrongful death action against Michael Coughlin and AMC, the manufacturer of the Rambler, for damages resulting from the wrongful death of her mother. Fred and Catherine Lingohr, the parents of Gloria Jean Lingohr, commenced a separate action against the same defendants for damages sustained by the heirs of Gloria Jean Lingohr's estate through her wrongful death. The civil actions against Michael Coughlin were settled and are not involved in this appeal. The gravamen of plaintiffs' allegations against AMC is that their decedents' deaths, due to incineration caused when the Rambler's gasoline tank ruptured and ignited upon impact, were due to AMC's negligent design of the vehicle.

The trial court granted AMC's motion for summary judgment in each case on grounds of the following conclusions of law:

"I.

"That there is no genuine issue as to any material facts.

"II.

"The question concerning the nature of the duty which an automobile manufacturer owes to users of its product presents an issue of law for the Court to determine.

"III.

"The manufacturer of a motor vehicle is not under a duty to make his automobile accident-proof or fool-proof.

"IV.

"The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur.

"V.

"That as a matter of law, the Defendant, American Motors Corporation is entitled to a Summary Judgment for dismissal of the Plaintiff's complaint."

This appeal requires a determination of whether the cases were properly disposed of by summary judgment.

Rule 56(c), North Dakota Rules of Civil Procedure, provides that:

". . . [Summary] Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. . . ."

"A material fact is one of such a nature as will affect the result or outcome of the case depending upon its resolution." Rathbun v. W. T. Grant Company, 219 N.W.2d 641, 646 (Minn.1974).

■■■ We have held that to be entitled to entry of summary judgment in his favor the movant must show that there is no genuine issue of material fact.

> "Under N.D.R.Civ.P. Rule 56 the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and the party opposing the motion will be given all favorable inferences which may reasonably be drawn from the evidence." Syllabus 3, Wolff v. Light, 156 N.W.2d 175 (N.D. 1968).

See also, Luithle v. Taverna, 214 N.W.2d 117 (N.D.1973).

This is a heavy burden in any case in which negligence is alleged.

■■ Wolff v. Light, *supra*, was an action for injuries sustained by plaintiff police officer in attempting to remove a piece of jagged glass from a cafe window broken by the defendant's automobile. This Court (Teigen, C. J., and Strutz, J., dissenting) reversed a summary judgment for the defendant, holding in Syllabus 2 that:

> "In cases involving issues' of negligence, contributory negligence, assumption of risk and proximate cause, where the standard of the reasonable man must be applied to conflicting testimony, and even where there is no dispute as to the facts, *where inferences may be reasonably drawn from the evidence that indicate the presence of a genuine issue of fact,* summary judgment should not be granted, but these issues should be tried in the usual manner." [Emphasis added.]

■■ In the instant case, there is no dispute as to the evidentiary facts, *i. e.,* that the plaintiffs' decedents were riding in a Rambler automobile manufactured by the defendant; that the automobile was involved in a rear end collision with another automobile; that immediately upon impact the Rambler burst into flames; and that the plaintiffs' decedents died as a result of incineration. This does not, however, negative the existence of an issue of fact. From these evidentiary facts, differing inferences may reasonably be drawn. One inference that could reasonably be drawn is that AMC had so designed and constructed the automobile it manufactured as to subject passengers in it to an unreasonable risk of harm from a foreseeable consequence of putting the automobile to its intended purpose. Another inference that could reasonably be drawn is that the collision was of such force that no steps AMC might have taken in the design and construction of this automobile would have prevented the harm that resulted. Since these differing inferences could reasonably be drawn and the adoption of one or the other would affect the outcome of the case, there is a "genuine issue as to any material fact" and the cases should have been tried.

> "It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of the opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trial or have the judge weigh evidence in advance of its being presented." Pierce v. Ford Motor Co., 190 F.2d 910, 915 (4th Cir. 1951).

> "But there are some instances in which it may appear that even if the facts are as plaintiff asserts them to be, there still can be no recovery and the entry of summary judgment for defendant is proper.

It bears repeating, however, that even when there is no dispute as to the facts, it usually is for the jury to decide whether the conduct in question meets the reasonable man standard; accordingly, courts have denied motions for summary judgment on issues of negligence, assumption of risk, contributory negligence, res ipsa loquitur, and pain and suffering." 10 Wright & Miller, Federal Practice and Procedure: Civil § 2729, p. 570.

"However, if any doubt exists as to the existence of a genuine issue as to a material fact, the doubt must be resolved in favor of finding that the fact issue exists. Facts, inferences, or conclusions that may be drawn by a jury are fact issues." Rathbun v. W. T. Grant Company, 219 N.W.2d 641, 646 (Minn.1974).

"Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." 10 Wright & Miller, Federal Practice and Procedure: Civil § 2725, p. 515.

In Mikkelson v. Risovi, 141 N.W.2d 150 (N.D.1966), an action for personal injuries sustained by a twelve-year-old boy in a fall from defendant's scaffold, we held in Syllabus 5 that:

"Questions of negligence and proximate cause are ordinarily for the jury to decide. They become questions of law only when reasonable men can draw but one conclusion therefrom."

As the foregoing statements of this court, other courts, and commentators illustrate, where questions of negligence or of compliance with the standard of the reasonable man are involved, issues of fact will usually be found to exist, thus precluding summary judgment, and that:

"Although a motion for summary judgment under Rule 56 may be made in any civil action, it is not commonly interposed, and even less frequently granted, in negligence actions." 10 Wright & Miller, Federal Practice and Procedure: Civil § 2729, p. 559.

The foregoing statements also illustrate that in cases where negligence, contributory negligence, assumption of risk, proximate cause, and the standard of the reasonable man are in issue, even if there is no dispute as to the evidentiary facts, if there is any doubt as to the existence of a genuine issue as to a material fact, or if the evidence is subject to conflicting interpretations, or differing inferences may be drawn, there is a jury question and summary judgment is improper. If there is a question whether one's conduct has met the standard of the reasonable man, whether one has acted reasonably or with due care, there is a question of fact to be determined by the jury.

A question arises, then, as to what AMC's duty was in designing, constructing, and marketing its products.

"There is no doubt whatever that the manufacturer is under a duty to use reasonable care to design a product that is reasonably safe for its intended use, and for other uses which are foreseeably probable." W. Prosser, The Law of Torts, § 96, p. 645 (4th ed. 1971).

The standard of care that everyone is required to meet in North Dakota is fixed by statute. Section 9–10–01, North Dakota Century Code, provides:

"Every person is bound without contract to abstain from injuring the person or property of another or infringing upon any of his rights."

Section 9–10–06, N.D.C.C., provides:

"Everyone is responsible not only for the result of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person. The extent of the liability in such cases is defined by sections 32–03–01 to 32–03–19, inclusive."

■ In Lindenberg v. Folson, 138 N.W.2d 573 (N.D.1973), an action against plaintiff's employer and the manufacturer of a potato

harvesting machine for injuries received when plaintiff's hand became caught in the machine, at a point where partially shielded sprockets and an unshielded chain were in easy reach and were natural objects for one's hand to contact, we held, at Syllabus 8, that:

"A manufacturer of a chattel owes a duty to the user, although there is no privity of contract between them, to design and manufacture the chattel so as to make it reasonably safe for the use for which it was intended."

We also stated in *Lindenberg, supra*, at page 582, that:

"It is also true that the manufacturer of a chattel owes a duty of care toward a user, although there is no privity of contract between them, where the article is inherently dangerous or where it is reasonably certain, if negligently designed or manufactured, to place life and limb in peril."

In *Lindenberg, supra*, at page 582, after citing Section 9–10–01 and Section 9–10–06, we quoted with approval Restatement of the Law, Torts, Sec. 398, as follows:

" 'A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.' "

Lang v. General Motors Corporation, 136 N.W.2d 805 (N.D.1965), was an action by a buyer for damages sustained in the purchase of a truck tractor because of alleged negligence in manufacture, construction and assembly of the truck tractor. The complaint alleged that the vehicle could not be operated safely on the highway; that it wobbled and shimmied due to negligent manufacture, construction, and assembly; and that plaintiff purchased the vehicle for trucking and hauling, and that it was not reasonably fit for such purposes. Plaintiff

appeals from a summary judgment for the manufacturer. This court held that lack of privity was no defense, and reversed. Although the case was decided on the issue of privity of contract, it is instructive on the matters of implied warranty of fitness and summary judgment as well. Paragraphs 3 and 4 of the Syllabus state:

"3. Where the manufacturer of a new motor vehicle puts such new vehicle into the channels of trade, and promotes its sale to the public by a wide program of advertising, there is an implied warranty that such vehicle is reasonably fit for the purposes for which it was intended, and such implied warranty accompanies such vehicle into the hands of the ultimate buyer.

"4. In an action by the buyer of a new vehicle against the manufacturer for negligence and for breach of warranty, allegations of plaintiff's complaint that the manufacturer negligently produced such vehicle and promoted its sale to the public, and that such vehicle was not reasonably fit for the purposes for which it was produced, raise substantial fact issues precluding summary judgment for the manufacturer, notwithstanding a lack of privity between the manufacturer and the ultimate buyer."

It is true, as the trial court held, that "The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur." But collisions are clearly foreseeable consequences of putting automobiles to their intended purpose of transportation. It is also true, as the trial court held, that "The manufacturer of a motor vehicle is not under a duty to make his automobile accident-proof or fool-proof." This is an impossibility. The fact that these things are true, however, does not mean that there was no genuine issue as to any material fact and that AMC was entitled to a judgment as a matter of law. Whether plaintiff's injuries

were occasioned by AMC's want of ordinary care or skill in the management of its property, or whether AMC's conduct met the standard of the reasonable man, or whether the design or manufacture of its product created an unreasonable risk is a fact question for the jury to determine.

Because Section 9–10–01 and Section 9–10–06, N.D.C.C., were derived from Section 1708 and Section 1714 of the California Civil Code, decisions of California courts are helpful in determining the scope of these sections and their applicability as a standard of care or conduct to be met by manufacturers.

Jaehne v. Pacific Tel. & Tel. Co., 105 Cal.App.2d 683 (Dist.Ct.App., Cal.1951), 234 P.2d 165, was an action by a telephone switchboard operator for injuries allegedly suffered when her finger was pricked on a strand of wire when she pulled the cords from a switchboard in a hotel. The evidence showed that many of the cords on the switchboard had become frayed. Upon motion, the trial court entered judgment for the defendant. The appellate court reversed, stating, at 105 Cal.App.2d 683, 687–688, 234 P.2d 168–169:

"Defendant argues that it owed no duty to plaintiff. Everyone is responsible for an injury occasioned to another by want of ordinary care in the management of his property. Civ.Code, § 1714. . . One who undertakes to furnish an appliance for the use of others ordinarily assumes a duty to furnish a proper and reasonably safe appliance, and is liable for injuries which may result to one using the appliance from his negligence. Blumberg v. M. & T. Incorporated, 34 Cal.2d 226, 229, 209 P.2d 1; Biondini v. Amship Corp., 81 Cal.App.2d 751, 763, 766, 185 P.2d 94; 65 C.J.S., Negligence, § 99, page 1072. The doctrine is placed on the ground of the failure of the former to exercise ordinary care which is due to everybody under the principles declared in sections 1708, 1714 and 3281 of the Civil Code."

In Thomas v. General Motors Corporation, 13 Cal.App.3d 81, 91 Cal.Rptr. 301 (1970), plaintiff sued a laundromat owner, washing machine dealer, manufacturer, and the manufacturer's sales organization for injuries sustained when her hand and arm were drawn into a washing machine after the glass window on top of the machine gave way when plaintiff, six years old at the time, leaned against the glass. A rubber "bead" to hold the glass in the lid was not in place at the time of the accident. With the bead in place, the glass could have withstood a pressure of 290–380 pounds. Without the bead, a force of 12–20 pounds applied to the glass could cause the glass to fall into the machine. Against the manufacturer, plaintiff alleged: (1) defect in the design and manufacture of the lid mechanism; (2) negligent design, manufacture, assembly, testing and inspection of the lid mechanism; and (3) negligent failure to warn users of a concealed danger and risk. A jury awarded plaintiff damages against the laundromat owner but determined that she take nothing from the other defendants. On appeal, GM and Frigidaire were the only respondents. The court reversed, stating, at 91 Cal.Rptr. 305:

"Strict liability encompasses both design and manufacture. (Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 64, 27 Cal.Rptr. 697, 377 P.2d 897.) There is no rational distinction between design and manufacture, since a product may be equally defective and dangerous if its design subjects protected persons to unreasonable risk as if its manufacture does so. (Pike v. Frank G. Hough Co., 2 Cal.3d 465, 475, 85 Cal.Rptr. 629, 467 P.2d 229.) 'A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.' (Rest.2d Torts, § 398; Pike v. Frank G. Hough Co.,

*supra,* 2 Cal.3d 465, 470, 65 Cal.Rptr. 629, 632, 467 P.2d 229, 232.)"

The court further stated in Thomas v. General Motors Corporation, *supra* (hereafter the court's citations are omitted), at 91 Cal.Rptr. 305–306:

"As the foregoing instruction correctly indicated, a manufacturer is not required to produce an accident-free or foolproof machine. . . . However, the manufacturer must use reasonable care to design his product so as to make it safe for the use for which it was intended. . . 'Reasonable care' varies with the facts of each case; it involves a balancing of the likelihood of harm to be expected from a machine with a given design and the gravity of harm if it happens against the burden of the precaution which would be effective to avoid the harm. . . . A product without necessary safety devices may be found defective.

. . . . .

"GM argues that a manufacturer cannot produce a product incapable of being misused, mismounted, abused, or negligently maintained. But it does not follow from these contentions that a manufacturer is under no duty to consider any of these factors when he is adopting a design for his product. Whether a manufacturer has conformed with a standard of reasonable care in adopting a plan or design should be left to the jury. Although it is incumbent on a plaintiff seeking to impose strict liability to establish that he was injured while using the product in a way it was intended to be used . . . a manufacturer may be held liable where the misuse by the customer was reasonably foreseeable.

"The instruction was also incorrect in precluding liability if the bead had been 'removed.' The issue of intervening causation is usually left to the jury . . . and foreseeability of the intervening act is the key element. . . . There was some evidence that there had been incidents of vandalism in the laundromat

during Malinda Lamb's ownership, and that missing beads had been replaced on several occasions. Whether the manufacturer should have foreseen this activity in adopting a design employing a removable bead to secure the glass is an issue which should have been left to the jury."

In another California case it is stated that:

"While strict liability should not be imposed upon the manufacturer (or distributor) when injury results from the use of its product that is not reasonably foreseeable, and while a *collision* may not be the normal or intended use of a vehicle, vehicle manufacturers must take *accidents* into consideration as reasonably foreseeable occurrences involving their products." Culpepper v. Volkswagen of America, Inc., 33 Cal.App.3d 510, 518, 109 Cal.Rptr. 110, 115 (1973). [Emphasis in original.]

In another case, also involving fire resulting from the rear end collision of another automobile, the California courts specifically held that

"manufacturers are strictly liable for enhanced injuries ('the second accident') caused by unreasonably dangerous defective design and construction of their products under the conditions described in section 402 A [Restatement of Torts 2d]." Badorek v. General Motors Corporation, 11 Cal.App.3d 902, 925, 90 Cal. Rptr. 305, 320 (1970).

Thus, the California courts have held that manufacturers must exercise reasonable care in designing their products so as to make them safe for their intended purposes; they must take reasonable steps to protect against harm resulting from foreseeable misuse of their products; and they have held that automobile manufacturers must take accidents into consideration as reasonably foreseeable occurrences involving their products, and that manufacturers have a duty to design and manufacture products which are not unreasonably dangerous, even though reasonable care is used

in the design and manufacture of the products.

This court has recently held that manufacturers must use reasonable care in designing their products to protect users against unreasonable risk of harm while putting the product to any reasonably foreseeable uses. In Seibel v. Symons Corporation, 221 N.W.2d 50, 55 (N.D.1974), a contractor's employee who fell and was injured as a result of the breaking of a weld on a support rod to a concrete form, to which plaintiff had attached the lanyard of his safety belt, brought an action against the manufacturer of the form. The trial court instructed, *inter alia*, that:

> " 'A manufacturer of goods has a duty to use reasonable care in the design of, in the materials used in, in the assembly of, and to inspect the goods to protect those who will use the goods from unreasonable risk of harm while the goods are being used for their intended purpose and while the goods are being used for any purpose which could be reasonably expected. This duty extends to any person using the goods or in the area of its use whether or not the person using the goods was the actual purchaser.

> .  .  .  .  .

> " 'A manufacturer of goods has a duty to give a reasonable warning as to dangers inherent or reasonably foreseeable in using the goods in the manner specified. This duty applies even though the goods may not be used in their specified manner, so long as such use is one that the manufacturer should reasonably foresee.' "

We approved (Teigen, J., dissenting) those instructions as being in conformity with the Restatement of Torts 2d, § 398, and with our holding in Lindenberg v. Folson, 138 N.W.2d 573 (N.D.1965).

■ Thus, we have previously held that manufacturers must exercise reasonable care in the adoption of their products' designs. We have also held that a manufac-

turer's duty to exercise reasonable care in the design of its goods to protect its users against unreasonable risk of harm while being used for their intended purpose also extends to any other uses or purposes which could reasonably be expected or which the manufacturer should reasonably foresee. Thus, the uses of its products from which a manufacturer must protect the users against unreasonable risk of harm include foreseeable misuse of its products.

What was AMC's duty to the users of its products? What events was AMC duty-bound to foresee?

> "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 100 (1928).

When AMC adopted the design that it did, should it have foreseen that its automobile might be involved in a rear end collision of such force as to burst the gasoline tank and that in such case the automobile might burst into flame and the occupants might be incinerated? In adopting the design that it did, did AMC exercise ordinary care to protect users of its product from unreasonable risk of harm in putting the product to its intended use or other foreseeable uses? Was AMC's conduct reasonable? These are questions of fact for the jury.

> "The duty of care does mean, on the other hand, that the manufacturer must take reasonable precautions in the light of these necessary dangerous propensities. What, if any, precautions are required is a question that will vary with the circumstances and will, as always, depend upon a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm." 2 Harper and James, The Law of Torts, § 28.5, p. 1542 (1956).

It was held in Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 85 (1960), that a manufacturer is under a spe-

cial obligation in connection with the construction, promotion and sale of its cars.

"In a society such as ours, where the automobile is a common and necessary adjunct of daily life, and where its use is so fraught with danger to the driver, passengers and the public, the manufacturer is under a special obligation in connection with the construction, promotion and sale of his cars."

 We would add that an automobile manufacturer is under a special obligation in connection with the design of its cars as well.

"The public interest in human life and safety demands the maximum possible protection that the law can give against dangerous defects in products which consumers must buy, and against which they are helpless to protect themselves; and it justifies the imposition, upon all suppliers of such products, of full responsibility for the harm they cause, even though the supplier has done his best." W. Prosser, Law of Torts § 97, p. 651 (4th ed. 1971).

 The manner in which the public interest in human life and safety can best be protected is by subjecting manufacturers and sellers of defective products that are unreasonably dangerous to strict liability in tort when their products cause harm to users and consumers.

 The status of the law in North Dakota may be best clarified by the express adoption of the rule of strict liability in tort, as set forth in § 402A, 2 Restatement of Torts 2d:

"Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercied all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

We are thus able to

" . . . insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901 (1962).

Summary judgments in these cases were improperly granted and are reversed and the cases remanded for trial on the merits.

ERICKSTAD, C. J., and VOGEL, PAULSON and JOHNSON, JJ., concur.