Albert LATENDRESSE, Plaintiff
and Appellee,

v.

Orville LATENDRESSE, a.k.a. Orville J.
Latendresse, and Ruth Latendresse,
Defendants and Appellants.

Civ. No. 9583.

Supreme Court of North Dakota.

June 20, 1980.

Michael S. McIntee, Towner, for plaintiff and appellee.

Charles D. Orvik Law Office, Rugby, by Gene A. Nygaard, for defendants and appellants, on brief only.

Orville Latendresse, pro se, on oral argument.

SAND, Justice (on reassignment).

This appeal by Orville and Ruth Latendresse from a summary judgment is a sequel to *Latendresse v. Latendresse*, 283 N.W.2d 70 (N.D.1979), wherein we declined to dismiss the appeal filed by Orville and Ruth Latendresse and permitted them to correct the defects in the appeal within fifteen days. In this case, except for the brief filed by an attorney, Orville acted pro se, but in 283 N.W.2d 70 Orville and Ruth were represented by counsel.

The facts leading to the summary judgment are succinctly stated in 283 N.W.2d 70:

"Albert commenced an action against Orville and Ruth for the sum of $4,000, together with interest thereon as evidenced by a promissory note dated February 9, 1963. The summons and complaint were served upon Orville and Ruth on June 13, 1978, by the sheriff of McHenry County. Orville and Ruth interposed an answer and a counterclaim on their own behalf, admitting the execution of the note but denying that demand for payment had been made or that they have refused to pay; together with a counterclaim for a promissory note executed by Albert due in 1955, for the wintering of cattle, for damages to their home caused by a fire in Albert's trailer, for loss of records to substantiate a $400,000 U.S.A. Wildlife depredation suit, for a $300,000 Pioneer State Bank breach-of-contract fund, and for other miscellaneous claims.

"Albert interposed a timely reply to the counterclaim.

"Albert's attorney served a request for admission, pursuant to Rule 36 of the North Dakota Rules of Civil Procedure, upon Orville and Ruth on August 2, 1978.

"Albert's attorney served a motion for summary judgment, pursuant to Rule 56, N.D.R.Civ.P., on Orville and Ruth on September 29, 1978. The motion was based upon two grounds: (1) that Orville and Ruth have failed to answer requests for admission as required by rule 36, N.D.R. Civ.P.; therefore, they have admitted all the material allegations of the complaint; and (2) that the allegations of the counterclaim not otherwise explained, do not constitute a claim upon which relief can be granted."

The answers to Albert's request for admissions were made and served upon Albert's counsel on 10 Oct. 1978. The hearing on the motion [1] for summary judgment was held on 11 Oct. 1978.

The request for admissions and the answers thereto are as follows:

## [REQUEST FOR ADMISSIONS AND] "ANSWER TO PLAINTIFF'S REQUEST FOR ADMISSIONS

"COMES Now the Defendants, Orville Latendresse and Ruth Latendresse, and

---

1. "MOTION FOR SUMMARY JUDGMENT

"COMES NOW, the Plaintiff and moves this Court for Summary Judgment against the named Defendants pursuant to Rule 56 of the North Dakota Rules of Civil Procedure for and upon the grounds that the Defendants have failed to Answer a Request for Admission in accordance with Rule 36 of the North Dakota Rules of Civil Procedure and thereby, have admitted all the <u>material allegations of the Complaint</u>. [Underscoring supplied.]

"Further, that the allegations of the Counterclaim not otherwise explained, do not con-

stitute a claim upon which relief can be granted.

"WHEREFORE, your movant prays this Court to set a time and place for hearing this motion.

"Dated at Towner, North Dakota this 28th day of September, 1978.

"S/ MICHAEL S. MC INTEE"

Note the motion for summary judgment refers to the complaint but does not specifically refer to the counterclaim except by the statement, "allegations of the Counterclaim not otherwise explained, do not constitute a claim upon which relief can be granted." However, our decision does not rest upon this point.

for their answers to Plaintiff, Albert Latendresse's, REQUEST FOR ADMISSIONS REPLY AS FOLLOW:

"*Request number (1)*. 'That your names are Orville Latendresse and Ruth Latendresse and that you are husband and wife and live in the vicinity of Upham, North Dakota?'

"*Answer*. Yes.

"*Request number (2)*. 'That you have made no payments whatsoever on the four thousand dollars ($4000.00) note given by you to Plaintiff Albert Latendresse dated February 9, 1963?'

"*Answer*. False. Defendant's Counterclaim of Seven hundred seventy nine thousand eight hundred fifty three dollars ($779,853.00) is more than adequate to cover Plaintiff's Complaint.

"*Request number three (3)*. 'That the fire as you claim that damaged your home actually was two separate fires?'

"*Answer*. False. When the Defendants were awaken by the light coming through their bedroom window from the second mobile home fire, their house had not as yet caught fire, but by the time the Fire Departments arrived on the scene the shingles and siding of Defendant's home nearest to Plaintiff's mobile home and grass in between was aflame.

"*Request number (4)*. 'That the Defendant Orville Latendresse entered the home after the first fire and used electrical appliances in the home to see if they would work?'

"*Answer (4)*. False. The Defendant made periodic inspections for new fire outbreaks or 'hot spots' with a water hose and 'trouble light' connected from Defendant's home and plugged the freezer in from Defendants home. When Plaintiff returned from Fargo he took that freezer out of the mobile home and put it in a granary. Defendant was never in plaintiff's home after Plaintiff reoccupied it.

"*Request number (5)*. 'That it is true that at no time after the first fire that the Plaintiff, Albert Latendresse, or his agents connected any electrical capabilities to the trailer home but rather removed items and checked them at the power pole?'

"*Answer*. I, Defendant Orville Latendresse, was not in or around Plaintiff's trailer house from the time Plaintiff returned from Fargo and took charge of that set fire to Defendant's home, but Curtis Latendresse witnessed Plaintiff testing appliances and insists Plaintiff did not take refrigerator out to the pole. A copy of his written testimony is enclosed and he will be available for cross-examination. Even if some of the appliances were removed from the trailer home for testing the fact that they were exposed to severe heat and subsequently a hot electrical circuit and returned to the trailer home they could have retained hot shorts that could have rekindled a new fire just like any other electrical circuit and under such conditions it was only proper for Plaintiff to maintain closer vigilance. Add to this Plaintiff's negligent foresight in setting his trailer home so close to Defendants home as to make it almost impossible to separate or shield one home from the other in case of fire. 35 Am.Jur.2d § 27 (Conditions of, or combustible materials on, premises). 'Liability for damages caused by the spread of fire from defendants premises may be predicated on his negligence in keeping his premises in such a condition that such a result was likely.' The circumstances under which a fire occurs may sometimes be such as to justify the application of the doctrine of res ipsa loquitur and thereby impose upon the defendant the onus of coming forward with evidence to show his freedom from fault.' (35 Am. Jur.2d § 51). The fact that absolute liability for injuries to property by fire may be imposed by statute, as has often been done in the case of a railroads liability, will not prevent the owner of property so injured from proceeding as at common law, basing his right to recover on negligence and not the statute.' 35 Am.Jur.2d § 46. 'Occupant may recover damages caused by fire.—In any action to recover damages under the provisions of this

chapter, the person injured by the fire need not allege or prove title to the real property over which the fire has spread. It shall be sufficient in any such action to allege and prove that the person injured was in the occupancy or possession of the ranch, building, improvement, fencing, timber, or other property injured and claims the right to and occupies any such cattle range with cattle. (NDCC 18–08–08).

"*Request number (7).* 'That the only damage done to the defendants home was some minor outside damage and that in fact no interior damage except smoke damage was done to the home?'

"*Answer.* False. The total of bids from the various contractors was $6868.40. The 'minor outside damage' as alleged by the Plaintiff was $3617.12—Hagel Lumber, Towner for shingles and siding and $240 to Northwest Builders Supply for lightning protection repairs. The attic insulation was included in the siding-shingling repair. The rest of the bids were for water damaged ceiling and wall plastering, floor covering, electrical wiring, drapery and clothes, musical instruments and other items damaged from water, fire or being thrown outside. The insurance only covered part of the loss and what's worse they cancelled our insurance because of this fire, which in itself is an even worse loss. If that's a *minor loss* what would be a 'major loss'.

"*Request number (8).* 'That in fact do documents have been destroyed or harmed owned by the defendants.'

"*Answer.* Defendant is unable to comprehend what kind of documents are 'do documents'. In any event, there were many people out here that night throwing papers, records and other household furnishings outside and away from the reach of fire and Plaintiff was not one of them so he would be unqualified to appraise what records were lost and or destroyed and which ones weren't. To this date I have been unable to completely reassemble my books for missing vouchers. A $500,000 Counterclaim against Pioneer Credit Company is presently in process of litigation. A $400,000 Inverse Condemnation suit against United States of America is soon to enter court. Both are dependent to a large degree on records for the last fifteen *years,* past records for a Veterans Administration pension are also required plus an Air Force BAQ allotment.

"Dated this 10th day of October 1978.
   "S/ ORVILLE J. LATENDRESSE"

The answers to the request for admissions were transmitted to Albert's counsel by the following letter:

   "Upham, North Dakota, 58789
   "October 10, 1978
"Mr. Michael S. McIntee
"McIntee Law Firm
"Towner, ND 58788
"Dear Mr McIntee:
"RE: Latendresse-vs-Latendresse
"I am enclosing a copy of Defendant's Reply to Plaintiff's Request for Admission. In Plaintiff's Motion to Summary Judgment he alleges that Defendants have failed to answer Plaintiff's Request for Admissions according to Rule 36 of the North Dakota Rules of Civil Procedure.

"Defendants deny those allegations and refer to 93 ALR2d 757–776 time for filing responses to requests for admissions; allowance of additional time § 3 Late filing accepted; generally. p. 759 and § 4. Effect of failure of request to designate time for answer, o. 761. 'Since no time limit was requested within which Defendant was to answer Plaintiff's 146 requests for admissions, it would be held that a reasonable time was allowed' *Trabon Engineering Corp. v. Eaton Mfg. Co.* (DC Ohio) 37 FRD 51 . . . 'When plaintiff's request for admissions did not designate time period for answer thereof, defendant's answer within reasonable time was timely.' *Apodaca v. Gordon* (App) 86 NM210, 521 P2d 1159 (citing annotation). Although Defendant has been in constant communication with Upham and State of North Dakota Fire Marshall's Departments attempting to

get a copy of the Fire Marshall's Report of the cause of the fire that damaged Defendants home on May 4th, 1978 I just received a notarized copy at 3:00 P.M October 10, 1978. Another principal witness Curtis Latendresse has been in hospitals in Minot, ND and Minneapolis, Minn recently, and was unable to testify at the time.

"Yours truly,

"S/ ORVILLE J. LATENDRESSE"

This letter, according to a notation at the bottom, was received 10/10/78 by addressee.

Curtis Latendresse, not a party to the action, made some unsworn answers to the request for admissions. They, however, do not satisfy or qualify under Rule 56(e) North Dakota Rules of Civil Procedure, and could not and apparently were not used by the court in its resolution of the motion for summary judgment.

On previous occasions we said that we do not believe that any rule or statute should be modified, altered, or applied differently merely because a party not learned in the law was or is proceeding pro se in a special proceedings, action at law or equity or in an appeal. *Dorgan v. Mercil*, 269 N.W.2d 99 (N.D.1978). This concept was reaffirmed in *Lang v. Basin Electric Power Coop.*, 274 N.W.2d 253, 259 (N.D.1979).

In order to determine if the summary judgment is proper it is necessary to determine first if the counterclaims were properly dismissed, because if any counterclaim remains to be resolved the summary judgment on the complaint alone would be improper.

The two principal counterclaims involved here are:

(1) The alleged oral contract between Albert and Orville for "wintering" Albert's cattle for the past ten years; and

(2) The allegations that Albert's negligence caused the second fire, resulting in damages to Orville and Ruth.

■ On the oral contract for "wintering" Albert's cattle for the past ten years, Albert argued the statute of frauds, § 9–06–04, NDCC, applied on the theory that it was a contract that could not be completed within one year and had to be in writing. The statute of frauds was not pleaded. However, the statute of limitations was pleaded as to paragraph I of the counterclaim relating to a promissory note for a loan in the amount of $2,637.50 on 15 Nov. 1950, but not specifically to the "wintering" of the cattle. The facts do not disclose whether the contract was a single contract or a series of year-to-year contracts running from fall to spring. There may also be a further question as to whether or not the contract was performed or partially performed so as to take it out of the statute of frauds. In *Buettner v. Nostdahl*, 204 N.W.2d 187 (N.D.1973), this court reaffirmed what it had said in *Parceluk v. Knudtson*, 139 N.W.2d 864, 871 (N.D.1966), that:

". . . whenever acts have been done which are of such a nature as to be consistent only with the existence of a contract for the sale of real property, the case is held to be taken out of the statute of frauds."

*Vasichek v. Thorsen*, 271 N.W.2d 555 (N.D. 1978), reaffirmed what was said in *Buettner, supra*. See also, *Kadrmas v. Kadrmas*, 264 N.W.2d 892 (N.D.1978).

After reviewing the record we are convinced that genuine questions remain as to the "wintering contract," i. e., was it a single contract or a series of contracts and was there any performance, partial or complete. We therefore reverse the trial court on its dismissal of the counterclaim relating to "wintering" cattle.

We now consider Orville's counterclaim alleging Albert's negligence brought about the fire and caused damages to Orville and Ruth (second fire).

■ The transcript of the hearing on 11 Oct. 1978 on the motion for a summary judgment discloses the following dialogue between the court and Orville Latendresse:

"MR. LATENDRESSE: Like I say, too, where the case was not prejudiced by late answering—

"THE COURT: The motion is completely prejudiced if he has gone to the trouble of preparing a motion and coming into Court on the theory he was right. If the Court—if we were to make an exception he is prejudiced. The plaintiff would be prejudiced if we now at this late date—if you had made your request before this motion was made or better yet when you should have made the request for additional time, when you saw the 45 day period couldn't be met. That was when you should have come in or just made application to the Court or just requested the plaintiff—without any question it would have been granted almost automatically. But you see there has got to be a termination date. If the Court drags along—there are a lot of cases. It takes a long, long time, particularly here where you only have a few terms a year. If you keep making exceptions they never would finish the court work.

"MR. LATENDRESSE: Well, if they got the difficult questions like they got in here.

"THE COURT: The only thing I am a little bit concerned about is that question number 8.

"MR. LATENDRESSE: That takes over 60 days.

"THE COURT: I'm going to rule against you on all of them except number 8. I think on question number 8 I'm going to give you 20 days more to submit an answer. I want the request for admissions in number 8 clarified at this time. How should this read? . . ."

The foregoing proceedings indicate the trial court was under the impression that a request for additional time to answer had to be made within the 30-day period provided for in Rule 36, NDRCivP. The proceedings also disclose that except for request number 8 the court, on the motion for summary judgment, considered all requests for admissions as admitted on the grounds that the answers were not made and served within the 30-day period.

However, Wright & Miller, Federal Practice and Procedure § 2257, page 720, regarding Rule 36, Civil Procedure, among other things, said:

". . . the admissions that otherwise would result from a failure to make timely answer should be avoided when to do so will aid in the presentation of the merits of the action and will not prejudice the party who made the request."

In a footnote it said:

"It does not further interest of justice to automatically determine all issues in lawsuit and enter summary judgment against party because deadline is missed, especially where opposing party is not prejudiced by allowing untimely responses. *Hadra v. Herman Blum Consulting Engineers* (D.C.Tex.1977) 74 F.R.D. 113."

Another footnote stated:

"Even though party's failure to respond to request for admission was not because of excusable neglect, court properly allowed the deemed admissions to be withdrawn and actual responses filed, where this caused no prejudice to the opposing party. *Marshall v. District of Columbia* (D.C.Ct.App.1978) 391 A.2d 1374, 1379 citing Wright & Miller."

Volume 4A Moore's Federal Practice (2d ed.), *Admission of Facts Procedure* § 36.-05[4] stated:

". . . the court may permit the party to file his answer after the expiration of such time where the delay was not caused by any lack of good faith."

*French v. United States* (Cir.Ct.App. 9th 1968), 416 F.2d 1149, 12 F.R.Serv.2d 36a.54 Case 1. *Demmert v. Demmert* (D.Alaska) 115 F.Supp. 430, 19 F.R.Serv. 36a.27, Case 1; *Ark-Tenn Distrib. Corp. v. Breidt*, (D.N. J.1953) 110 F.Supp. 644, 18 F.R.Serv. 36a.54, Case 1, aff'd (C.A.3d 1954), 209 F.2d 359, 19 F.R.Serv. 36b.3, Case 1.

The foregoing authorities clearly establish that an extension of time within which to answer requests for admission may be made after the time period of 30 days has elapsed.

The court did not explain how plaintiff was prejudiced nor does the record reflect that plaintiff was prejudiced. There is no

showing that witnesses, as a result of failure to answer within time, are no longer available or that certain evidence is no longer available because of the failure to respond within the time specified by the rule. The court obviously has erroneously equated the mere making of a motion with prejudice.

This court has not ruled on this precise question but has expressed itself on comparable situations.

In *LeFevre Sales, Inc. v. Bill Rippley Construction*, 238 N.W.2d 673 (N.D.1976), Chief Justice Erickstad, on behalf of the court, said:

"Because we believe it is important to reach the merits whenever reasonably possible, we deny the motion for dismissal which was based upon Rippley Construction's failure to comply with Rule 11 N.D. R.App.P. It does not appear that Le-Fevre Sales will be prejudiced if Rippley is permitted to file the record with this court and serve its brief on appeal at this late date. . . ."

See also, *Nodak Mutual Insurance Co. v. Loeffler*, 225 N.W.2d 286 at 289–290 (N.D. 1974); *Hogan v. Knoop*, 191 N.W.2d 263 at 266 (N.D.1971).

In *Gerhardt v. Fleck*, 251 N.W.2d 764 (N.D.1977), after setting out somewhat recent cases in which motions to dismiss were granted and motions to dismiss appeal were denied, we denied a motion to dismiss an appeal where the appellant had failed to perfect the appeal in a timely manner. We said:

"Counsel for the appellant did present reasons, if not to justify the delay, at least to explain it. The dispute as to the amount of the judgment is an additional factor we take into account. The noncompliance with the Rules resulted in a delay of only a few weeks and appellees have demonstrated no particular prejudice or detriment from this delay."

These cases clearly illustrate that mere delay in itself is not always prejudicial. Albert did not show how or in what manner he was prejudiced.

■ The party moving for a summary judgment has the burden to demonstrate clearly that there is no genuine issue of material fact. *Boone v. Estate of Nelson*, 264 N.W.2d 881 (N.D.1978).

■ The party opposing a motion for summary judgment is to be given all favorable inferences which may reasonably be drawn from the evidence. *Johnson v. American Motors Corporation*, 225 N.W.2d 57 (N.D.1974).

■ Even though facts may not be in dispute, summary judgment is inappropriate if inferences reasonably deducible from the facts are conflicting. *Zuraff v. Empire Fire & Marine Insurance Co.*, 252 N.W. 302 (N.D.1977).

In *Kirton v. Williams Electric Cooperative, Inc.*, 265 N.W.2d 702 (N.D.1978), this court quoted from *Clausen & Sons v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 389 (8th Cir. 1968), as follows:

"If there exists the slightest doubt as to a factual dispute or 'genuine issue of fact' summary judgment should be denied."

■ A motion for summary judgment may be granted only if, after considering the evidence and inferences in the light most favorable to the party against whom the judgment is demanded there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *St. Paul Fire & Marine Insurance Co. v. Amerada Hess Corporation*, 275 N.W.2d 304 (N.D.1979); *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355 (N.D. 1977).

■ One of the basic issues raised by the counterclaim and reply pertains to the fire allegedly attributed to Albert's negligence and the alleged resulting damages. Negligence cases by their very nature are poor subjects for summary judgments. *Helbling v. Helbling*, 267 N.W.2d 559 (N.D.1978).

In *Hart v. Kern*, 268 N.W.2d 136, 138 (N.D.1978), we said that:

". . . even where there is no dispute as to the facts, if inferences may be reasonably drawn from the evidence to

indicate a genuine issue of fact, summary judgment is improper and a trial should be had. *Kirton v. Williams Electric Cooperative, Inc.*, 265 N.W.2d 702 (N.D. 1978); *Johnson v. American Motors Corporation*, 225 N.W.2d 57 (N.D.1974); *Wolff v. Light*, 156 N.W.2d 175, 178 (N.D. 1968). This is especially true in cases involving the standard of reasonable men, issues of negligence, assumption of risk, and such related items. Wright & Miller, Federal Practice and Procedure: Civil § 2729, p. 570, quoted in *Johnson, supra.*"

The requests for admissions do not cover this point adequately. Even if the requested admissions are deemed admitted, the basic issue of negligence and damages still remains. Furthermore, it is doubtful that a request for an admission on the principle point in issue is proper. It is comparable to requesting an admission that the allegations are false and the lawsuit has no value.

The negligence issue is still present in this case even though the court ruled that the request for admissions were deemed admitted.

When negligence is an open question, as it is here, then comparative negligence may become a matter to be resolved.

Also, the matter of damages is a question of fact which has not been resolved even though by the "admission route" they would be considered minor. But what is minor damage? This certainly varies with each person.

The question on the documents allegedly lost as a result of the fire has no significance unless the negligence is established. It should be observed that it is not claimed that the documents were destroyed by the fire but rather because of the fire they were lost. This includes actions taken by others to presumably safeguard the papers from the fire.

The effect of the trial court's decision in allowing additional time (20 days) to respond to request number 8 because of the typographical error, "do" for "no," is an anomaly. If the answers to the other questions are deemed admitted and if such ad-

missions eliminated the issue of negligence, then what would be the purpose or significance of extending the time to answer question number 8? Ironically, however, the trial court, after Albert said he would let his answer stand, proceeded to grant summary judgment. This is a clear indication that the trial court believed that the answer to admission number 8 was of significance, which adds to the total confusion in this case.

In the final analysis, by taking into account the totality of this case, the ends of justice were not satisfied or furthered when the trial court ruled the question in the request for admissions were deemed admitted because of failure to respond within the time period specified in the rule when there was no showing of prejudice; and by granting summary judgment on the erroneous assumption that no genuine issue of fact, either by evidence or by inference, existed.

The summary judgment is reversed and the case is remanded for further proceedings in accordance with this opinion. Costs assessed to neither party.

PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring in part and dissenting in part.

I agree with the majority opinion insofar as it holds that a genuine issue of fact remains as to the "wintering" of cattle; however, I disagree that summary judgment was improper as to the $4,000 note dated February 9, 1963, and as to the other counterclaims. I would remand the case for further proceedings only on the issue of Orville and Ruth's right to an offset for their costs in wintering Albert's cattle.

Although I agree with the majority opinion that a late response to a request for admissions should not *automatically* cause the matters contained therein to be admitted, I believe it goes too far in allowing litigants relief who do not follow the applicable rules.

To apply Rule 36, NDRCivP, in every case, without exception, could result in in-

justice in some cases but, where the claims are as incredible as the majority of the counterclaims in this case are, the Rule should be applied. This is clearly the type of case in which the Rule should apply.

Rule 36, NDRCivP, in relevant part, provides as follows:

"Each matter of which an admission is requested shall be separately set forth. *The matter is admitted unless,* within *30* days after service of the request, or within such shorter or longer time as the court may allow, *the party to whom the request is directed serves upon the party requesting the admission a written answer or objection* addressed to the matter, signed by the party or by his attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of the summons and complaint upon him." [Emphasis added.]

Confronted with the request for admissions, Orville and Ruth were required to either (1) admit the truth of the statements, (2) deny their truth, or (3) explain why they could not admit or deny them, and object to them in writing. The failure to respond at all constitutes an admission of the truth of the statements contained in the request. See *DeGrove v. Sanborn,* 70 Mich.App. 568, 246 N.W.2d 157 (1976); *Woodrow v. Johns,* 61 Mich.App. 255, 232 N.W.2d 688 (1975); *Weva Oil Corporation v. Belco Petroleum Corporation,* 68 F.R.D. 663 (D.C.W.Va.1975).

Orville and Ruth attempt to justify their failure to respond by pointing out the fact that a typographical error made one of the questions ambiguous. However, they give no explanation why the other seven questions were not answered and the ambiguous one objected to within the prescribed period. I do not believe this is too great a burden to place upon a party when served with a request for admissions. In order to justify granting additional time, the failure to make a timely response must be due to excusable neglect and must not prejudice the party requesting the admissions. *Coolik v. Hawk,* 133 Ga.App. 626, 212 S.E.2d 7 (1974). The lack of understanding of the

rules by one who declines to seek the assistance of an attorney should not be treated as excusable neglect.

In the instant case, the district court stated in its decision from the bench that Albert would be prejudiced if Orville and Ruth's late answers were accepted as Albert came to court prepared to argue the motion and delay would result. This type of prejudice was accepted as sufficient to warrant not allowing late responses to a request for admissions in *Weva Oil Corporation v. Belco Petroleum Corporation, supra:*

"In the instant case, permitting Weva to respond out of time would prejudice Belco by requiring it to prove matters contained in its requests for admission . . . . From the record before the court, it can be ascertained that while the introduction of such evidence could in all probability be accomplished, the task would be lengthy, laborious and extremely costly to Belco. In considering the weight of prejudice in such circumstances, the court must not treat lightly such burdens when visited upon a litigant, especially when that litigant has properly utilized the Rules of Civil Procedure to advance his litigation toward a '. . . [j]ust, speedy and inexpensive . . .' (Rule 1, F.R.C.P.) conclusion." 68 F.R.D. at 666–667.

The court's decision to deem the matters admitted was within its discretion, as was the court's decision to allow an answer to be given for question # 8 which was ambiguous.

The trial court's conclusion that several of the claims are no longer in issue and summary judgment as to these claims should be granted was correct:

(1) As to Albert's claim on the $4,000 note: Orville and Ruth admit in their answer that they signed the $4,000 promissory note dated February 9, 1963, and admit through the requests for admissions that no payments have been made on the note.

(2) As to Orville and Ruth's claim for damages to their house and for loss of documents in a fire allegedly caused by Albert: through the requests for admissions, Orville and Ruth admit that any loss they might

have incurred is not chargeable to Albert's negligence.

(3) Finally, the trial court properly dismissed Orville and Ruth's counterclaim for a $2,637.50 promissory note executed by Albert which was dated March 15, 1950, as collection is barred by the Statute of Limitations. See § 28–01–16, NDCC.

I would therefore hold that as to the promissory note dated February 9, 1963, there remains no justiciable issue of fact to be tried, and that the trial court properly granted Albert's motion for a summary judgment. As for Orville and Ruth's various counterclaims, I would hold that all were properly dismissed except for their claim for the costs they incurred wintering Albert's cattle. I would remand on this issue alone for a determination of whether or not an offset is due for the service provided.

There should be no further judicial effort extended on Orville's claim that the loss of some papers, which he cannot describe, resulted in his inability to prove "a $400,-000.00 USA Wildlife depredation suit, a $300,000.00 Pioneer State Bank Breach of Contract suit, a suit [for] a Veterans pension, and [for] a US Air Force dependency allotment."

ERICKSTAD, C. J., concurs.